1

2                          IN THE UNITED STATES DISTRICT COURT
                           IN AND FOR THE DISTRICT OF DELAWARE
3
     LAMBDA OPTICAL SOLUTIONS, LLC,
4                                         :    CIVIL ACTION
                                          :
5              Plaintiff,                  :
     v.                                    :
6                                          :
                                           :
7    ALCATEL-LUCENT SA, et  al.,          :
                                           :
8              Defendants.                 :
     ------------------------------        :
9    ALCATEL-LUCENT USA, INC. and  :
     ALCATEL-LUCENT HOLDINGS, INC.,  :
10                                         :
               Counter-claimants,  :
11                                         :
     v.                                    :
12                                         :
     LAMBDA OPTICAL SOLUTIONS, LLC;  :
13   LAMBDA OPTICAL SYSTEMS CORP.;   :
     and ANASTASIOS TZATHAS,          :
14                                         :    NO. 10-487-LPS
               Counter-defendants.
15                                   - - -

16                           Wilmington, Delaware
                           Thursday, November 3, 2011
17                           *Oral Argument Hearing*

18                                   - - -

19   BEFORE:       HONORABLE **LEONARD P. STARK**, U.S.D.C.J.

20   APPEARANCES:                      - - -

21
                   ASHBY & GEDDES, P.A.
22                 BY:  STEPHEN J. BALICK, ESQ., and
                       ANDREW C. MAYO, ESQ.
23
                       and
24

25                                    Brian P. Gaffigan
                                      Registered Merit Reporter

```
1    APPEARANCES:  (Continued)

2
              PROCOPIO CORY HARGREAVES & SAVITCH, LLP
3             BY:  VICTOR M. FELIX, ESQ.
                   (San Diego, California)
4
                   Counsel for Plaintiff
5

6             MORRIS NICHOLS ARSHT & TUNNELL, LLP
              BY:  KAREN JACOBS LOUDEN, ESQ.
7
                   Counsel on behalf of Tellabs, Inc.
8

9             POTTER ANDERSON & CORROON, LLP
              BY:  RICHARD L. HORWITZ, ESQ.
10
                   Counsel for Defendants FDK America Inc.,
11                 Fujitsu America Inc., Fujitsu Computer
                   Products of America Inc., Fujitsu Frontech
12                 North America Inc., Fujitsu Ltd.,
                   Fujitsu Network Communications Inc.
13

14            MORRIS NICHOLS ARSHT & TUNNELL, LLP
              BY:  KAREN JACOBS LOUDEN, ESQ.
15
                   Counsel for Defendant Cisco Systems, Inc.
16

17            SHAW KELLER, LLP
              BY:  JOHN W. SHAW, ESQ.
18
                   and
19
              ROPES & GRAY, LLP
20            BY:  SASHA RAO, ESQ.
                   (East Palo Alto, California)
21
                   and
22
              ROPES & GRAY, LLP
23            BY:  TODD M. SIMPSON, ESQ.
                   (New York, New York)
24
                   Counsel for Alcatel-Lucent Holdings Inc.,
25                 Alcatel-Lucent Marketing Inc., Alcatel-Lucent
                   SA, Alcatel-Lucent USA Inc.
```

```
 1    APPEARANCES:  (Continued)

 2
                    RICHARDS LAYTON & FINGER, P.A.
 3                  BY:  JEFFREY L. MOYER, ESQ.

 4                       and

 5                  KING & SPALDING.
                    BY:  ALLISON H. ALTERSOHN, ESQ.
 6                       (New York, New York)

 7                       Counsel for Nokia Siemens Networks Oy

 8
                    O'KELLY, ERNST, BIELLI & WALLEN, LLC
 9                  BY:  SEAN O'KELLY, ESQ.

10                       Counsel for Anastasios Tzathas

11

12

13

14                             - oOo -

15                      P R O C E E D I N G S

16                  (REPORTER'S NOTE:  The following oral argument

17    hearing took place in open court, beginning at 10:02 a.m.)

18                  THE COURT:  Good morning, everyone.

19                  (The attorneys respond, "Good morning, your

20    Honor.")

21                  THE COURT:  Let's start by putting your

22    appearances on the record, please.

23                  MR. O'KELLY:  Good morning, your Honor.  Sean

24    O'Kelly on behalf of Anastasios Tzathas.

25                  MR. BALICK:  Your Honor, good morning.
```

```
 1                THE COURT:  Good morning.

 2                MR. BALICK:  Steven Balick for Lambda from Ashby

 3   & Geddes.  Also, my colleague Andrew Mayo is with us today,

 4   and Victor Felix from the Procopio firm in San Diego.

 5                MR. FELIX:  Good morning.

 6                THE COURT:  Good morning.

 7                MR. SHAW:  Good morning, your Honor.  John Shaw

 8   from Shaw Keller for the Alcatel-Lucent, SA parties.  With

 9   me is Sasha Rao and Todd Simpson from Ropes & Gray.

10                THE COURT:  Welcome.

11                MS. JACOBS LOUDEN:  Good morning, your Honor.

12   Karen Jacobs Louden from Morris Nichols.  I'm here for Cisco

13   and Tellabs.

14                THE COURT:  Good morning.

15                MR. MOYER:  Good morning, your Honor.  Jeff

16   Moyer from Richards Layton on behalf of Nokia Siemens

17   Network.  I have with me my co-counsel, Allison Altersohn

18   from the King & Spalding firm.

19                THE COURT:  Okay.  Welcome.

20                MR. HORWITZ:  Good morning, your Honor.  Richard

21   Horwitz from Potter Anderson & Corroon.  I'm here for

22   Fujitsu.

23                THE COURT:  All right.  Well, welcome again to

24   everyone.  We are here for two purposes this morning.

25   First, and primarily, is the motion to dismiss Mr. Tzathas;
```

1    hopefully, I have that close to accurate; and then we're

2    also going to talk about scheduling, but I do want to hear

3    argument on the motion first, so we will hear that.  And I

4    will let you pronounce your client's name.

5              MR. O'KELLY:  Thank you, your Honor.  Again,

6    Sean O'Kelly from O'Kelly, Ernst, Bielli & Wallen on behalf

7    of Anastasios Tzathas.

8              Your Honor, may it please the Court, Mr. Tzathas

9    has obviously moved to dismiss the counterclaims filed

10   against him for lack of jurisdiction.  Procedurally,

11   Mr. Tzathas came to this case as a counterclaim defendant.

12   The underlying case is a patent infringement case brought

13   by Lambda against Alcatel.  The claims can be broke out

14   into two categories.  There are four claims against him,

15   individually for alleged breach of various duties,

16   contractual and otherwise, and three as a joint tort-feasor

17   with Lambda.

18             Your Honor, my comments will be brief.

19   Alcatel-Lucent asserts there are two bases for personal

20   jurisdiction.  I'll address the long-arm statute first and

21   then the assertion under Rule 4(k)(1)(B) that there is

22   personal jurisdiction.

23             Obviously we dispute both.

24             Your Honor, as to the long-arm statute, the

25   position endorsed an opinion by Judge Farnan is instructive.

1    Alcatel-Lucent, as we've disputed personal jurisdiction,

2    Alcatel-Lucent has to meet two requirements.  The first is

3    that Mr. Tzathas falls within the long-arm statute, the

4    other is that his constitutional rights are being subverted.

5              Under the long-arm statute, none of the six

6    sections of 10 Del Code 3104 apply.

7              I'll refer your Honor to the declaration, but in

8    particular, Mr. Tzathas is a resident of Maryland.  He

9    worked in New Jersey.  He has no contacts with Delaware

10   whatsoever.  He has never worked here.  He has never lived

11   here.  He doesn't own property.  He doesn't transact

12   business.  He has never performed work.

13             Those are the rough corners of 3104, the facts

14   that apply in this instance.

15             For Alcatel's part, they asserted Mr. Tzathas --

16             (The Court sneezes.)

17             MR. O'KELLY:  Bless you.

18             THE COURT:  Thank you.

19             MR. O'KELLY:  Alcatel-Lucent for their part

20   asserts Mr. Tzathas incorporated the predecessor to Lambda,

21   Princeton Optical.  Not to put too fine a point on that.

22   That is just factually wrong.  We submitted documents to

23   support that and, therefore, to the extent that their

24   jurisdictional analysis relies on that, Your Honor, we

25   dispute that.  And we submitted, of course, affidavits and

1    supporting documents to that effect.

2              He did not incorporate Princeton Optical.  In

3    fact, he didn't begin working there until six months after

4    it had been incorporated.  He had been working at Lucent at

5    that time.

6              To the extent, your Honor, that they assert that

7    there is jurisdiction on alter-ego basis, again, that is

8    factually just wrong.  Again, not putting too fine a point

9    on it.  He didn't own any entity.  He wasn't controlling any

10   entity.  And, in fact, he didn't own stock.

11             The point is that Alcatel-Lucent failed to, in

12   any event, assert any fraud or injustice or inequity, even

13   assuming there was a viable alter-ego claim as required

14   under *CNH America*.  Therefore, as to the Delaware long-arm

15   statute, we assert there is no personal jurisdiction.

16             THE COURT:  Under the Delaware long-arm statute,

17   why should I not give them jurisdictional discovery into

18   inquire into the things you asserted?

19             MR. O'KELLY:  That is fair, your Honor.

20             Our position, your Honor, is that we have

21   actually given them discovery in the form of multiple

22   affidavits, one in our opening and one in our reply brief

23   and additional rebuttal documents, documents that I think

24   fairly point out in fact that their contentions are

25   misapplied or a misapprehension of fact.  So the discovery,

1    we would submit, your Honor, has already been tendered to

2    them.

3              Your Honor, finishing out the first element, the

4    constitutional due process.  *International Shoe* requires

5    minimal contacts.  Again, *Physician Endorsed* as applied by

6    Judge Farnan I think stands squarely on the notion that

7    personal jurisdiction in this instance doesn't apply.

8              With regard to Rule 4(k)(1)(B), your Honor,

9    certainly we don't dispute the 100-mile rule.  We concede

10   that he I believe is 96 miles away and, certainly, the

11   Internet doesn't lie.

12             That is important in fact for later on, obviously,

13   because Mr. Tzathas, while we assert he is not subject to

14   personal jurisdiction, he is subject to Rule 45 subpoena

15   service.  Presumably, that would be available to Alcatel-Lucent

16   in the event they choose to take his deposition as to facts

17   they consider material in this action; the underlying

18   action, of course, being the patent infringement action.

19             Aside from that, though, your Honor, Alcatel-Lucent

20   asserts Mr. Tzathas is a necessary party.  Now, the reasons

21   they tender for that is manyfold but I'll march through them

22   to the extent I can in some order.

23             Obviously, complete relief is something they

24   complain would be impeded.

25             That there would be increased legal expense,

1    duplicative lawsuits, inconsistent adjudication, alter-ego

2    theory.

3             Beginning with the last first.  Obviously, I

4    have addressed the alterego theory.  That is just wrong on

5    the facts.

6             Complete relief.

7             Your Honor, I'll point to the counterclaims,

8    paragraphs 16-37 tendered by Alcatel-Lucent where in fact

9    they say that there are other people who worked at

10   Alcatel-Lucent who signed confidential agreements and then

11   left and went to work at Lambda other than Mr. Tzathas.

12   None of the folks have been called to appear named as

13   defendants.

14            The argument would then be by their analysis if

15   Mr. Tzathas is required to be here, so are all these other

16   folks.  We, of course, dispute that.

17            With regard to duplicative lawsuit, the

18   lawsuits, I guess your Honor I would point to no further

19   than the scheduling order that has been tendered in this

20   matter.  I think you will see and I can make the point that

21   what, in fact, we're seeing are in fact two different

22   lawsuits.  The scheduling order carves out different

23   schedules, different requirements, different obligations,

24   depending on the allegations asserted.  In fact, the

25   argument that what is larded on top of the typical patent

1    scheduling order is in fact the civil complaints that are

2    asserted against Lambda and against my client.

3              A not insignificant fact, your Honor, in

4    *Multimedia Games*, joint tort feasors are not considered

5    necessary parties.  That is something that needs to be

6    certainly embraced in this instance at least as to three

7    of the seven counts against my client.

8              The last point, your Honor, with regard to

9    inconsistent obligations.

10             The point that was raised in Alcatel-Lucent

11   papers relates to inconsistent adjudications.  That is, in

12   fact, not the standard.  Inconsistent adjudications, for

13   example, if they were called upon to defend an infringement

14   suit here and then required to file a civil against

15   Mr. Tzathas in another jurisdiction, that is an argument

16   there could be incomplete or inconsistent adjudications;

17   and it's fairly clear, your Honor, under the law that is

18   actually not a basis for finding that there should be

19   personal jurisdiction when there is none.

20             Importantly, and more as a wrap-up, your Honor,

21   again, I mentioned the subpoena power that still exists.

22   The 100-mile rule still applies, Rule 45.  And, importantly,

23   Alcatel-Lucent is not being denied a defense by his absence.

24             Thank you, your Honor.

25             THE COURT:  If I reach the necessary party

1   analysis, is that a discretionary decision, or assuming I

2   agree with you on the points that you have made, do I have

3   discretion to join him nonetheless or I don't?

4            MR. O'KELLY:  Your Honor, I think the analysis

5   of the facts is reviewed by the Court.  The standard as I

6   understand it is discretionary but in view of the facts as

7   submitted.

8            THE COURT:  Okay.

9            MR. O'KELLY:  Thank you, your Honor.

10           THE COURT:  Thank you.

11           MS. RAO:  Good morning, your Honor.

12           THE COURT:  Good morning.

13           MS. RAO:  Sasha Rao with Ropes & Gray on behalf

14  of Alcatel-Lucent.

15           May it please the Court, nothing is more

16  fundamental to a patent infringement lawsuit than the

17  ownership of the patent in suit.  And, the patentee is

18  required to make a showing of ownership in order to proceed

19  with the patent infringement lawsuit.

20           Here, the '229 patent that is the subject of

21  this lawsuit lists Tzathas as a named inventor.  Mr. Tzathas

22  assigned it to a Delaware corporation called Princeton

23  Optical Systems.  That is the predecessor in interest to

24  Lambda Optical Systems Corp., the patentee.  And, this

25  lawsuit has been brought by a different entity called Lambda

1     Optical Solutions, LLC that purports to be the exclusive

2     licensee of the patent in suit.

3             So there are two independent reasons for your

4     Honor to find that Mr. Tzathas is subject to personal

5     jurisdiction here.

6             The first is that he is a necessary party

7     under Rule 19 and he was properly served.  And,

8             The second reason is that exercise of

9     jurisdiction is proper under the Delaware long-arm statute.

10            I'm going to be addressing the first reason that

11    he is a necessary party, and my colleague Mr. Shaw will be

12    addressing the Delaware long-arm statute.

13            Now, Mr. Tzathas is a necessary party to decide

14    the issue of the ownership of the '229 patent because a

15    number of the counterclaims are directed at precisely that

16    issue.  Mr. Tzathas, while he was employed at Lucent, signed

17    an employee assignment agreement of intellectual property,

18    and Alcatel-Lucent contends that the inventions claimed in

19    the '229 patent is beneficially owned by Alcatel owned by

20    Alcatel-Lucent and is subject to a contractual duty by

21    Mr. Tzathas to assign this patent to Alcatel-Lucent.

22            So this issue of ownership is what the seven

23    counts against Mr. Tzathas are directed to.  Four of them

24    are just to Mr. Tzathas alone, not with anybody else.

25            So Rule 19(a) says, a person who is subject to

1    service of process and whose joinder will not deprive the

2    Court of subject matter jurisdiction must be joined as a

3    party if:

4              the Court cannot afford complete relief among

5    the existing parties; or

6              that person claims an interest relating to the

7    subject of the action and is so situated that disposing of

8    the action in the person's absence may:

9              leave an existing party subject to a substantial

10   risk of incurring double, multiple or otherwise inconsistent

11   obligations because of the interest.

12             Now, the advisory committee rules to this rule

13   say, one of the things it says is that the interest that are

14   being furthered here are not only those of the parties but

15   also that of the public in avoiding repeated lawsuits on the

16   same essential subject matter.

17             So the subject matter of the counterclaims

18   that Mr. Tzathas's attorney would like us to prosecute in a

19   separate action deal with the ownership of the patent in

20   suit, and that would be precisely the same subject matter

21   that this Court would also have to adjudicate.

22             If Alcatel-Lucent owned the patents in suit,

23   then it can't be sued for infringement of its own patent.

24             Alcatel-Lucent should not be put in this

25   position.  This leads to inconsistent obligations and will

1    will lead to essentially to two separate lawsuits on the

2    same subject matter.

3              THE COURT:  So, in your view, the Court has

4    to resolve the ownership dispute as part of this case

5    regardless of whether he is in the case or not?

6              MS. RAO:  That's correct, your Honor.  And any

7    relief Lambda seeks in this case would be inconsistent with

8    the beneficiary ownership issues.

9              So because Mr. Tzathas is necessary to the

10   ownership issues in this case, which permeate all the

11   counterclaims against him, and if the Court is persuaded

12   that he is a necessary party, then the issue of jurisdiction

13   under Delaware's long-arm statute is moot.

14             My colleague, Mr. Shaw will address the Delaware

15   long-arm statute.

16             THE COURT:  Thank you.

17             MR. SHAW:  Good morning again, your Honor.

18             Even accepting what Mr. Tzathas has put in the

19   record through his declarations, there is enough now to at

20   least get the jurisdictional discovery and perhaps to keep

21   him in the court on jurisdictional grounds.

22             There are two things.  One we talked about in

23   our answering brief, and the other actually appeared in his

24   reply brief declaration.

25             First, we have what appears to be his statement

1    from 2004 that he was a co-founder of Princeton Networks.

2    We don't know precisely what that means, and that is one of

3    the main purposes of the jurisdictional discovery here.

4    But typically cofounders are not simply employees, as

5    Mr. Tzathas tries to portray himself in his declarations.

6            We know that through the print we originally

7    pulled through Lexus, but we also went back on the way-back

8    machine and found an original website from 2004, from Dorsal

9    Networks that has the same text.  It's verbatim in the

10   Lexus.

11           The other component is from the reply brief, as

12   I mentioned.  In that one, there is a statement.  It's in

13   paragraph 4 of the declaration, and this is docket item 104.

14   Mr. Tzathas wrote that he was approached by Moon W. Kim, who

15   apparently was the other founder of Princeton Networks, to

16   work for Princeton Networks some time in the spring of 2000.

17   That is a fact we didn't know and wouldn't know unless he

18   put it here and the kind of thing we would want to learn in

19   jurisdictional discovery.

20           In the spring of 2000, he is still working for

21   Lucent at that point isn't time.  It's unclear the month or

22   exactly when it happened but it is around the formation of

23   the entity; and then, of course, we know later in time he

24   describes himself as a co-founder.  So there is at least two

25   indications we have now that he was integrally involved in

1    the formation of the Princeton Networks entity.

2              How does that fit into personal jurisdiction?

3    Long-arm statute (c)(1), (c)(3), the subsections, both deal

4    with and can be implicated by transacting business in

5    Delaware, for example, creating a Delaware entity that is

6    at the core of the conduct that is complained of in the

7    counterclaims.

8              It's also not just the formation.  If you look

9    through Mr. Tzathas's declaration, there were a series of

10   activities with that entity under Delaware corporate law

11   that changed the entity.  Each of those are also a contact

12   with Delaware, a transaction within the state, by the

13   entity that took assignment of Mr. Tzathas's patent which

14   Alcatel-Lucent is making the allegations about in the

15   counterclaims.

16             The other component comes from the, again, reply

17   declaration.  If indeed it was the case that Mr. Tzathas and

18   Mr. Kim were working on forming Princeton Networks while he

19   is at Lucent, and whether or not Mr. Tzathas participated

20   directly himself in creating the Delaware entities, the key

21   falls within the conspiracy theory of jurisdiction because

22   the Delaware entity again is the single act within the state

23   in furtherance of the claims that are at issue.

24             That's all I have.

25             THE COURT:  All right.  Thank you very much.

1              Any rebuttal?

2              MR. O'KELLY:  Just briefly, your Honor.

3              Your Honor, to the extent I understood the

4    argument, I think the record is clear in fact that Mr. Tzathas

5    was not involved in the incorporation of Princeton Networks.

6    In fact, the submission that in 2004 he was somehow involved

7    doesn't comport with either our pleadings or the affidavits

8    when, in fact, he left in May of 2001.

9              With regard to contacts with Delaware, I think I

10   understood, and, of course, I dispute, that actions taken by

11   companies, even assuming Mr. Tzathas was at those companies,

12   somehow comports with the contact by him in Delaware.  I

13   dispute that.  I'm not sure that is in line with the law.

14             What remains, though, with regard to the issue of

15   ownership, those are issues that remain whether Mr. Tzathas is

16   involved in the action as an individual defendant or not.  He

17   can be deposed as a co-inventor.  He can be subpoenaed with

18   regard to facts related to his work previously.  Presumably,

19   there are other folks they are going to reach out and take

20   the depositions of that are not named individually in this

21   suit as I mentioned.  They, in fact, admit as much in their

22   counterclaims.

23             Thank you, your Honor.

24             THE COURT:  Is there any chance that he is going

25   to assert an ownership interest?

1          MR. O'KELLY:  I'm not sure there would be.  He

2    assigned those, so as an effective matter, he doesn't have

3    an ownership interest.

4          THE COURT:  I'll give you a chance to talk when

5    he is done.  Don't worry.

6          (Ms. Rao sits back down.)

7          THE COURT:  Why should I or, more importantly,

8    why should Alcatel-Lucent, why should we take any risk that

9    ownership issues won't be completely resolved when the Court

10   and parties are already going to be looking at that, so why

11   not view him as a necessary party?

12         MR. O'KELLY:  Sure.  I think the analysis with

13   regard to the long-arm statute and, obviously, the Fourteenth

14   Amendment compel us to look I think fairly stringently as

15   joining people for some other reason.  The analysis sets forth

16   the distinction between folks that are involved and submitting

17   to personal jurisdiction.

18         THE COURT:  Under the 4(k)(1), where does the

19   due process clause come in?

20         MR. O'KELLY:  Well, your Honor, I think the

21   case law recognizes that there is -- there is a two-part

22   analysis.  In fact, in *Physicians Endorsed*, Judge Farnan

23   called it out and said you look at, in this instance, 10 Del

24   Code 3104, and at the second part of the analysis, you make

25   sure, according to the standards set forth in *International*

1    *Shoe*, that there are minimum contacts such that it comports

2    with traditional notions of fair play and substantial

3    justice.

4              THE COURT:  Do you disagree that if the

5    requirements of 4(k)(1) are satisfied, that the Court then

6    has personal jurisdiction over your client and doesn't

7    even need to even reach the long-arm statute?  That is,

8    Alcatel-Lucent is arguing there are two separate bases, as I

9    understand it.  Do you disagree with that as a theoretical

10   notion?

11             MR. O'KELLY:  I'm not sure I understand the

12   question.  To the extent I understand it, if we're within

13   4(k)(1), either (A) or (B), yes, I would concede there is

14   personal jurisdiction, to the extent I understand the

15   question.  Yes.

16             THE COURT:  Well, they have argued to me, if I

17   understand them, that Ms. Rao has asserted a basis for

18   exercising jurisdiction over your client.  If I agree with

19   her, I don't need to get to Mr. Shaw's issues which are

20   long-arm statute and due process clause.  I know you don't

21   agree that they met their burden on any of them, but if I

22   agree Ms. Rao has met her burden, do I need to get to

23   Mr. Shaw's issues?

24             MR. O'KELLY:  I understand.  I'm not sure I

25   agree with that.  I think you pass through -- you pass

```
 1    through 3104 and then get to -- I don't have the rule in

 2    front of me but as I recall the rule, I think it requires

 3    that there be jurisdiction under the long-arm statute and

 4    that it comports with Rule 19, as I understand the rule.

 5              THE COURT:  Okay.  Is there anything else?

 6              MR. O'KELLY:  No, your Honor.  Thank you.

 7              THE COURT:  Ms. Rao, did you want to add

 8    something?

 9              MS. RAO:  Just briefly, your Honor.

10              The question you asked counsel for Mr. Tzathas,

11    is he planning to assert ownership.  Well, he already has.

12    By assigning the invention to Princeton Optical Networks, he

13    exercised his ownership right which we contend was ours.  It

14    was not his to begin with.

15              So that's all I wanted to say, your Honor.

16              THE COURT:  And what about, did I misunderstand

17    your position that, with all due respect to Mr. Shaw, I can

18    ignore him if I rule with respect to you?

19              MS. RAO:  That's correct.  That is exactly our

20    position.

21              THE COURT:  Is there a due process analysis I

22    have to undertake?

23              MS. RAO:  I don't believe so, your Honor.

24              THE COURT:  Thank you.

25              Mr. Shaw, is there anything you want to add?
```

1                    MR. SHAW:  Nothing, your Honor.

2                    THE COURT:  Let's talk about the scheduling

3    order.  Whomever on the plaintiff's side wishes to address

4    it can go first.  It looked like there are only a couple of

5    disputes.

6                    MR. FELIX:  Good morning, your Honor.  Victor

7    Felix for the Lambda entities.  May it please the court.

8                    I just want to start with the first dispute.

9    You are correct, there are two disputes that are left in the

10   scheduling order.

11                   We have a disagreement as to whether

12   infringement and invalidity contentions should be made part

13   of the scheduling order in this case.

14                   I'll start by saying that the norm in Delaware

15   is not to have contentions.  What the defendants are asking

16   to do is to deviate from those norms.

17                   Just so you understand what is going on here,

18   the defendants' goal is not to try and streamline the case

19   or simplify issues.  What their true goal is to basically

20   get the plaintiff to give them an early disclosure of the

21   infringement contentions as to what products infringe and

22   which manner they do so based on the limited availability of

23   public information that is available to us at this point in

24   the case.

25                   With those contentions in place, the goal then

1    is to deny us discovery to just the disclosures that are

2    made in those contentions.

3              We've had this issue before with opposing

4    counsel in other jurisdictions that do have local patent

5    rules.  That that is exactly what happens.  We disclose

6    infringement contentions based on local patent rules.  Then

7    discovery proceeds.

8              We asked for source code, for example.  This

9    particular case involves software.  What happens is when we

10   get to a point of asking for source code, we get limited in

11   terms of what the contentions are.  So if your contentions

12   don't implicate some other part of the source code or

13   software, they won't give it to you, basically arguing that

14   that is not part of the contentions, that is not an issue

15   that is in place in the case because they're not disclosed

16   or it's not implicated by the infringement contentions.

17             I think, your Honor, once you file a lawsuit that

18   meets Rule 11 that we've done our due diligence and have a

19   basis to bring this case in front of your Honor, that we have

20   the right to do the discovery that we need to do to identify

21   any product or any means in which infringement takes place

22   and not be limited by some early disclosure of infringement

23   contentions where we don't have the opportunity to look at

24   source code, where the defendants basically are in control

25   of all of the information before we're able to prepare those

```
 1   contentions.
 2              THE COURT:  I'm sure you know I have a procedure
 3   for resolving discovery disputes.  So let's say theoretically
 4   the defendants stand up and say that is not what they're
 5   trying to do, and I make you do preliminary contentions
 6   subject to supplementation, and then you ask to see source
 7   code, and they give you only a limited amount, and then we
 8   have a discovery dispute because you want to see more of it
 9   and not be limited to what you put in your preliminary
10   contentions.
11              Why can't I just deal with it at that point in
12   the discovery process?
13              MR. FELIX:  Well, your Honor, I don't think there
14   is any more burden to do this by sending interrogatories,
15   asking what our contentions are.  We would still be obligated
16   to supplement those interrogatories.  So there is no added
17   burden to the defendants to get that information through
18   discovery in terms of the contentions.
19              The problem is that these contentions are being
20   used to deny us the ability to get that discovery.  We have
21   had that dispute before, in fact, with a firm that is here
22   representing another party, where we went through that
23   process, we had motions to compel, and because the Court's
24   docket was very busy, it couldn't rule on the motion to
25   compel, but in the meantime we get a motion for summary
```

1    judgment based on those contentions, and now we're in the

2    Court of Appeals arguing those very issues.

3                So, you know, really at the end of the case here

4    what we're trying to do is just get to the truth, and so we

5    fear that if we start implementing these contentions, they

6    are more burdensome to us than they are on them.  Only

7    because we need to get information from them to be able to

8    determine how these products infringe, which products

9    infringe, we are going to need discovery from them.

10               On the other hand, we have defendants who have

11   to supply invalidity contentions which are based on public

12   information.  They don't need anything from us in terms of

13   being able to develop and prepare their invalidity contentions.

14               If anything, the one piece of infringement that

15   they need from us is date of conception, a priority date,

16   that again they can get that through discovery.  And,

17               Let's not forget that at the end of the case, this

18   is going to end up having res judicata effect that whatever

19   the judge determines, there will be res judicata, so we will

20   be prevented from ever bringing a claim that was asserted or

21   could have been asserted.  They're really setting up this case

22   to basically limit our ability to be able to discover what

23   other products are implicated in terms of infringement and

24   what means of infringement are there.

25               That's it, your Honor.

1          THE COURT:  Did you want to address the other

2     issue?

3          MR. FELIX:  Sure.  The other issue is, your

4     Honor, the requirement that the defendants file a single

5     motion for summary judgment on invalidity and/or unenforce-

6     ability.

7          We don't think it's any burden on defendants to

8     coordinate that particular motion because prior art is going

9     to be -- those issues are going to be coming for all types

10    of defendants.

11         Now, we recognize there may be issues that may

12    be unique to each defendant but when it comes to invalidity

13    or unenforceability, I think it would just be a big waste

14    of time to have multiple motions on invalidity or unenforce-

15    ability when those issues are common to all defendants.

16         THE COURT:  Okay.  Thank you.

17         MR. FELIX:  Thank you.

18         MR. SHAW:  Good morning again, your Honor.

19         On the contention issue, I think the best way to

20    phrase it is the provision that the defendants have proposed

21    essentially codifies what is supposed to be the common law

22    rule here in Delaware as to how the contentions get answered.

23    If you sat a bunch of lawyers and practitioners down in a

24    room without the cases sitting here and said write it out,

25    you would get pretty much our provision.

1           The question is why put it in the order.  The

2     answer to that is twofold.  First, we're seeing that in

3     multiple defendant cases.  Judge Robinson did something

4     like that on her *Walker Digital* cases or something similar

5     to this, asking the plaintiffs to come out with initial

6     contentions, followed by invalidity contentions, and the

7     rationale is pretty straightforward.

8           If you don't do that, as a practical matter, not

9     in every case, and I'm not saying the plaintiffs here would

10    be in this position, but the contentions come back pretty

11    thin and you enter into a pretty lengthy meet and confer

12    process which is pretty expensive.  It's a difficult issue

13    to present to your Honor because it's hard for you to gauge,

14    sitting there, looking at responses, how detailed they are,

15    how detailed they aren't.  And,

16          The provision that we're proposing is simply

17    put down on the table what it is you know and when you know

18    it.  And then the reasonable and seasonable -- subject to

19    reasonable and timely amendment statements at the bottom of

20    the page is what Rule 26(e) is.  So that is pretty much the

21    position for us.

22          There are a couple details that come beyond

23    that.  For example, Cisco has no models identified so they

24    don't know what they would be focusing on or even how to

25    frame their invalidity contentions.  And on the invalidity

1    contention front, that is another issue that comes up as the

2    discovery goes on.

3              Typically, if a plaintiff only gets contentions

4    on independent claims, we're only going to do contentions on

5    independent claims, and then at the end of the discovery

6    schedule, there is a big brouhaha about adding contentions,

7    adding products, and that spills down into the process for

8    you potentially later.

9              On the second point on case dispositive motions,

10   just two things to say.

11             One, we're very early in the case.  We don't know

12   what positions people will be taking, and it is possible for

13   defendants to have different invalidity positions.  And you

14   have seen claim construction arguments I'm sure where some

15   defendants had different views on the construction of the

16   claim terms than other defendants, and that, of course, will

17   play out as their invalidity positions and infringement

18   contentions in the case.

19             The second is everyone in this room is a repeat

20   player here.  We have no interest in overburdening the Court.

21   It's, in fact, our interest to keep things manageable so you

22   can get reasonably quick results which will help everyone

23   resolve the case.

24             THE COURT:  There was a suggestion during the

25   argument on the first motion that I essentially have in this

1   scheduling order recognition that there are two cases and

2   not one.

3          Do you want to address whether that is, in your

4   view, a fair reading of the parts that are agreed on this

5   scheduling order?

6          MR. SHAW:  I will invite Ms. Rao to comment as

7   well, but I don't think that is the case.  There are specific

8   discovery issues and discovery limits that would be relevant

9   between Mr. Tzathas and Alcatel-Lucent that others may not

10  have, and that is what the difference in the scheduling order

11  comes down to, so they can be accommodated without having

12  other machinations that will impact parties that won't be to

13  focused on that dispute.

14         THE COURT:  And other than in response to my

15  question, did you believe you were speaking on behalf of all

16  defendants on scheduling?

17         MR. SHAW:  I believe that is the case.  But if

18  anyone disagrees, they can come up.

19         THE COURT:  All right.  First, Ms. Rao, is there

20  anything you wanted to say in response to what you just

21  heard?

22         MS. RAO:  I just want to point out one thing on

23  the schedule, your Honor.

24         That the reason we came up with the separate

25  limits for our counterclaims is because we didn't want the

1    other defendants and the plaintiff to be burdened by that.

2              THE COURT:  Okay.  Thank you.

3              Is there anybody on this side of the room?

4              MS. JACOBS LOUDEN:  Yes, your Honor.  Again,

5    Karen Jacobs Louden for Cisco and Tellabs.

6              Just briefly, your Honor, on the issue of

7    contentions.  I think one of the reasons we want to have

8    those early is this case involves optical network switches.

9    What is important for us to know is how it is at least

10   initially that plaintiff is reading its patent on those

11   products and what components it thinks are part of that

12   product design.  So,

13             We're hoping to actually avoid some discovery

14   disputes by knowing what to look for in order to know what

15   they think is part of the accused product and what isn't.

16   That also helps on the invalidity side because we want to

17   frame invalidity contentions that go to meet the allegations

18   of infringement.  Although prior art references are publicly

19   available, we need to see how they're applying their claims

20   in order to meet issue and join issue.

21             The other thing I would point out is right now

22   that no particular claims have been asserted, so without

23   contentions, we're dealing with all of the claims of the

24   patent.

25             THE COURT:  What is inadequate about the standard

1    approach that I have taken, which, as I understand it, would

2    be the plaintiff's position with respect to contention

3    interrogatories?

4         MS. JACOBS LOUDEN:  I think, first of all, as we

5    heard from Mr. Felix, they had a basis for -- they feel they

6    had a basis for filing suits that have something now.

7         I think what we're trying to do now is we do

8    have five defendants with distinct products, and we're a year

9    and-a-half into the case.  So what we're trying to do now is,

10   to avoid disputes going forward, to have some certainty as to

11   when we're going to have those contentions so we can try to

12   manage the case a little bit better and not be getting,

13   as Mr. Shaw says, sort of a trickle of contentions and then

14   there we are at the end of the case where they don't have

15   the documents they need, we don't have contentions that are

16   meeting the infringement contentions.  So we're trying to do

17   this in a more orderly way given we do have five defendants

18   with complex products that are all different.

19        THE COURT:  Okay.  Thank you.

20        MS. JACOBS LOUDEN:  Thank you.

21        THE COURT:  Is there anybody else on the defense

22   side of the room?  No?

23        Is there anybody on the plaintiff side of the

24   room?

25        MR. FELIX:  Yes.  I would just add a couple of

1    comments, your Honor.

2              The kind of detailed contentions that the

3    defendants want from plaintiff at this point, that issue is

4    going to be present whether they do it through interrogatories

5    or whether we do it through these requirements of infringement

6    contentions.

7              The difficulty is that at this point, our infringe-

8    ment analysis is based on publicly available documents, white

9    papers, other things we are able to get from the defendants

10   website and other public documents.

11             To give those kinds of detailed contentions right

12   now, we will give them what our basis is as we know it at

13   this point, but those disputes as to whether they're detailed

14   enough, you didn't identify some particular function and some

15   piece of code, that's just not going to be available.  So the

16   risk is that if we give these preliminary contentions now,

17   according to this scheduling order, as they want to have

18   happen, they -- and I have seen this done before.  I have

19   dealt with this issue before -- they will limit any future

20   discovery on what has been disclosed in those contests.

21             Again, the information that they're looking for,

22   we can give it to them through interrogatories.  There is no

23   difference.  If they want an element-by-element analysis on

24   the products, identify the products, identify the claims, we

25   can do that with respect to contention interrogatories.

1    It's no different.  The burden on them to get that information

2    is no different.

3                But the end game here is to just box us, box the

4    plaintiff in or put the plaintiff into this box where then

5    they deny any attempt to get discovery on other issues that

6    were not identified on the infringement contentions.  And,

7                On the issue of motions for summary judgment, Mr.

8    Shaw mentioned that different defendants may have different

9    claim constructions, so that may affect whether to file

10   motions jointly or not.

11               Once your Honor gets past the claim construction

12   hearing and issues a claim construction order, that is the

13   only claim construction that matters.  That's the only one

14   that the parties can use in terms of using as a basis for

15   motions for summary judgment.

16               THE COURT:  Okay.  Thank you.

17               Mr. O'Kelly, your client may be in the case.  Is

18   there anything you want to say about scheduling?

19               MR. O'KELLY:  No, your Honor.  Thank you.

20               THE COURT:  All right.  We're going to take a

21   short recess and then I'll come back and give you my rulings.

22               (Brief recess taken.)

23               THE COURT:  Let me give you my rulings on the

24   motion to dismiss and then on the scheduling disputes.

25               First, with respect to Mr. Tzathas's motion to

1    dismiss for lack of personal jurisdiction, the motion is

2    denied.

3            The Court is persuaded by defendant Alcatel-Lucent

4    that it has personal jurisdiction over Mr. Tzathas pursuant

5    to Federal Rule of Civil Procedure 4(k)(1)(B) which provides,

6    with a little bit of paraphrasing, serving a summons

7    establishes personal jurisdiction over a defendant who is a

8    party joined under Rule 19 and is served within a judicial

9    district of the United States and not more than 100 miles from

10   where the summons was issued.

11           It's undisputed that Mr. Tzathas has been served

12   with a summons and is less than 100 miles from this judicial

13   district.

14           The issue is then whether he is a party properly

15   joined under Federal Rule of Civil Procedure 19; and the

16   Court concludes that he is.

17           Rule 19(a)(1) makes him a person required to be

18   joined, if feasible -- and it is feasible because he is

19   subject to service of process -- his presence will not

20   deprive of the Court of subject matter jurisdiction; and,

21   additionally, in his absence, the Court cannot accord

22   complete relief among existing parties.  And,

23           He claims an interest relating to the subject of

24   the action.  So disposing of the action in his absence might

25   leave Alcatel-Lucent subject to a substantial risk of

1    incurring multiple or otherwise inconsistent obligations

2    because of the interest.

3              I reached this conclusion based on the dispute

4    over ownership of the patent in suit.  Essentially, this case,

5    regardless of whether or not Mr. Tzathas is a party, will have

6    to resolve whether Mr. Tzathas had an ownership interest in

7    the patent in suit such that he could assign it in a manner

8    that would allow it to ultimately be asserted in this case

9    by the plaintiff against the defendant, Alcatel-Lucent, or

10   whether any rights that he had in the patent in suit were

11   already legally transferred to Alcatel-Lucent as a result

12   of agreements between Mr. Tzathas and Alcatel-Lucent.  Not

13   including him, therefore, would mean that Alcatel-Lucent might

14   well have to file another lawsuit in another court which could

15   reach an inconsistent decision as to ownership.

16             The Court further agrees with Alcatel-Lucent

17   that it need not reach the issue of whether the Delaware

18   long-arm statute would apply or undertake a separate due

19   process analysis.  As the Court understands it, there is no

20   constitutional challenge to the applicability of Rule

21   4(k)(1)(B) or Rule 19 as it applies to this case.

22             That's the ruling with respect to the motion to

23   dismiss.

24             On scheduling, there are the two disputes.

25             First, the Court rejects the defendants'

1    request for a precise schedule for disclosure of preliminary

2    infringement contentions.

3         I'm going to adhere to my standard approach,

4    understanding that there is a risk that I will be hit with a

5    discovery dispute arguing that the responses to contention

6    interrogatories are inadequate.

7         It is certainly true that those are difficult

8    disputes to resolve.  I don't look forward to it, if it's

9    going to happen, but I'm going to trust the good judgment

10   of counsel on both sides to provide what can reasonably be

11   expected at each point in the case and to work cooperatively

12   to ensure that that is what is exchanged on both sides.

13   And if, alas, that trust turns out to be unfounded and I

14   have a dispute, I will be looking closely who has been more

15   forthcoming and more reasonable given the point in the case

16   at which the issue arises.  And,

17        On the other issue, I am rejecting plaintiff's

18   proposed request to at this point limit the defendants to

19   a coordinated set of, or a coordinated invalidity summary

20   judgment motion.

21        Again, I'm going to extend my trust to counsel

22   that if they are briefing common issues and raising precisely

23   the same arguments that they will find the most effective

24   and efficient way to present that to the Court without

25   unnecessarily burdening the plaintiff or the Court.

1            So that's my rulings.  The parties should

2   submit to me by Monday a cleaned up version of the proposed

3   scheduling order reflecting the rulings today, and I will

4   sign that.

5            Is there anything else we should talk about at

6   this time?  First from the plaintiffs.

7            MR. FELIX:  No, your Honor.

8            THE COURT:  No.  Mr. O'Kelly?

9            MR. O'KELLY:  No, your Honor.

10            THE COURT:  From any of the defendants?

11            MR. SHAW:  Not from Alcatel-Lucent, your Honor.

12            THE COURT:  Thank you all very much.

13            (Hearing ends at 11:05 a.m.)

14

15        I hereby certify the foregoing is a true and accurate
    transcript from my stenographic notes in the proceeding.

16

17                        /s Brian P. Gaffigan
                        Official Court Reporter
18                        U.S. District Court

19

20

21

22

23

24

25