IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LAMBDA OPTICAL SOLUTIONS LLC,

        Plaintiff,

v.

ALCATEL-LUCENT SA, *et al.*,

        Defendants.

_____

ALCATEL-LUCENT USA INC., and
ALCATEL-LUCENT HOLDINGS INC.,

        Counter-Claimants,

v.

LAMBDA OPTICAL SOLUTIONS LLC,
LAMBDA OPTICAL SYSTEMS CORP., and
ANASTASIOS TZATHAS,

        Counter-Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 10-487-RGA-CJB

██████████████████████

REDACTED-PUBLIC VERSION

## RESPONSIVE DISCOVERY DISPUTE
## LETTER TO THE HONORABLE CHRISTOPHER J. BURKE

OF COUNSEL:
ROPES & GRAY LLP
William J. McCabe
Todd M. Simpson
1211 Ave. of the Americas
New York, NY 10036
(212) 596-9000

Sasha G. Rao
Brandon H. Stroy
1900 University Ave.
East Palo Alto, CA 94303
(650) 617-4000

Dated: November 28, 2012

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
*Attorneys for Defendants Alcatel-Lucent USA Inc.
and Alcatel-Lucent Holdings Inc.*

# SHAW KELLER LLP

Andrew E. Russell
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com

November 28, 2012

**BY CM/ECF AND HAND DELIVERY**
The Honorable Christopher J. Burke
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street, Unit 28, Room 6100
Wilmington, DE  19801-3555



REDACTED-PUBLIC VERSION

Re:   *Lambda Solutions LLC v. Alcatel-Lucent USA Inc., et al.*, C.A. No. 10-487-RGA-CJB

Dear Judge Burke:

I write on behalf of Defendants/Counterclaim-Plaintiffs Alcatel-Lucent USA Inc. and Alcatel-Lucent Holdings Inc. ("Alcatel-Lucent") in response to Plaintiff/Counter-Defendant Lambda Optical Solutions LLC's ("Lambda") November 27, 2012 letter.

Lambda should not be given a wholesale discovery extension because it has not diligently pursued its claims during this litigation's long history, as illustrated by the timeline below:

- **June 4, 2010** -- Lambda files litigation. (D.I. 1.)

    *-- Over two years elapse… --*

- **August 2, 2012** -- Lambda requests 120 day extension of September 21, 2012 fact discovery deadline during meet-and-confer.

- **August 15, 2012** -- Court enters stipulated extension of the close of fact discovery to December 17, 2012.  (D.I. 238; 8/15/2012 Docket Order.)

- **October 24, 2012** -- Lambda doubles the number of accused products and, for the first time, provides infringement contentions for two products it had first identified on February 13, 2012.

- **November 12, 2012** -- Lambda requests another three month extension of fact discovery during meet-and-confer.

- **November 14, 2012** -- Lambda notices its *first* deposition of Alcatel-Lucent.

- **December 17, 2012** -- Current close of fact discovery.

Rather than evaluate the merits of Lambda's own infringement case, Lambda hopes to pressure settlement by stretching out the schedule and further increasing the litigation cost for Alcatel-Lucent. By all appearances, Lambda is a plaintiff that does not want to try this case.  Indeed, all eight other defendants have already settled.

The discovery burden Lambda seeks to thrust onto Alcatel-Lucent -- demonstrated by its catch-all list of discovery disputes in its opening letter and its request for another extension -- is disproportionately high compared to its own valuation of this case. Fed. R. Civ. P. 26 directs courts

# SHAW KELLER LLP

Page 2

to assess proportionality between discovery demands and the value of the litigation.  *See also Wyeth v. Impax Labs., Inc.*, 248 F.R.D. 169, 171 (D. Del. 2006).  Alcatel-Lucent respectfully requests that the Court compel Lambda to evaluate fully its infringement case and to rein in its overly broad discovery demands.

## Lambda's Letter Does Not Accurately Reflect The Status Of Its Discovery Disputes:

Most of the discovery "disputes" in Lambda's long list are mischaracterized and not ripe for the Court's attention, as described below.[1]  Additionally, these "disputes" relate almost entirely to damages; Lambda has not presented justification for an extension on liability issues.

**Pre-suit sales:**  Under the facts as admitted by Lambda, Lambda is not entitled to pre-suit damages under any cognizable legal theory.  Yet, to minimize discovery disputes, Alcatel-Lucent previously agreed to produce its pre-suit sales on four accused products (and did so) even though it squarely disputes their relevance.  (Exh. A at pg. 2, 8/3/2012 Letter Fellowes to Phillips; D.I. 274-3 at pg. 3 (cites are to original page numbers of document); D.I. 274-5.)  But because Lambda misstates the law and presents the Court with an incomplete set of facts in arguing it is entitled to pre-suit damages, Alcatel-Lucent responds accordingly and requests that the Court find that Lambda is not entitled to pre-suit damages.

*Lambda misstates the law:*  Under the plain language of 35 U.S.C. § 287 and controlling caselaw, if a patentee does not mark a patented product there are *only two ways* that damages can be recoverable -- (1) by beginning to mark or (2) "on proof that the infringer was notified of the infringement" (actual notice).  *See, e.g., Minks v. Polaris Industries Inc.*, 546 F.3d 1364, 1375 (Fed. Cir. 2008); *Nike Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998).  Lambda admits that it never marked its patented products and does not claim that it provided actual notice before filing this lawsuit, yet claims it can begin recovering damages after it stopped selling.  (Exh. B at Responses to Interrogatories 3 and 4; Exh. C.)  Lambda incorrectly and solely relies on *Tulip Computers Int'l v. Dell Computer Corp.*, C.A. No. 00-981-KAJ, 2003 WL 1606081 (D.Del. 2003).  The *Tulip* Court found that damages can be recovered *before* sales of the patented product began and, once a patented product is sold, *after* actual notice.  Here, the first period does not apply because Lambda was selling a patented product as of the patent issue date (Dec. 6, 2005).  The *Tulip* holding aligns with the statute -- Lambda can only claim damages after actual notice.  Here, the earliest actual notice was the filing of the lawsuit (June 4, 2010).

*Lambda presents incomplete facts:*  The marking requirement of 35 U.S.C. § 287 is triggered by "making, *offering for sale*, or selling" a patented article.  Lambda Systems' President and CEO Irfan Ali testified that Lambda was offering a patented product for sale until at least June 9, 2011 (the date of his deposition), well after this lawsuit was filed.  (Exh. D, Ali Depo. Tr. at pgs. 40-41, 49-50, 179-71, and 219-20 ("We have not stopped selling.").)  Accordingly, Lambda cannot be entitled to pre-suit damages and Alcatel-Lucent should not have to produce additional pre-suit sales information on the newly accused products.

---

[1]   Alcatel-Lucent encourages Lambda to narrow its list of disputes for the Court.  If the parties can find time before Friday's call, Alcatel-Lucent remains willing to meet and confer.

# SHAW KELLER LLP

Page 3

**Non-infringement contentions:**  There can be no dispute that Lambda bears the burden of proving infringement.  Lambda's motion to compel Alcatel-Lucent to provide *non*-infringement contentions on products Lambda first accused a month ago and for which it has not provided infringement contentions should be rejected as an inappropriate attempt to shift its burden. Lambda's assertion that its infringement theories for the missing contentions are "similar" to those articulated in its October 24, 2012 contentions is reckless and false.  Lambda already dropped one product it had accused (the Lambda Unite) because Alcatel-Lucent pointed out that it is an electrical switch, yet Lambda now claims its current infringement theories apply to the 1870 TTS, another electrical switch, and also to the 1696 Metrospan Metro-WDM and Metropolis EON, two products that do not even have switching capability.  (D.I. 274-2, -6.)  Alcatel-Lucent has affirmatively explained to Lambda why these products should be dropped from the case and identified supporting documentation.  (*Id.*)  Alcatel-Lucent should not be obligated to provide additional contentions until it has first received Lambda's.

Lambda previously argued that it should be able to postpone providing infringement contentions until after "the completion of Judge Stark's [sic] review of Judge Burke's recommendations on claim construction," but Lambda now admits the recommendations govern and argues that Alcatel-Lucent should have already provided non-infringement contentions because it has had the same recommendations.  (D.I. 274-5.)  Lambda also blames its own delay in providing contentions on receiving documentation on certain accused products on October 3rd,[2] but it conveniently ignores that it did not request such discovery until August 30th.[2]  (Exh. E.) Additionally, Lambda still has not provided infringement contentions for the 1696 Metrospan Metro-WDM, a product for which Alcatel-Lucent produced technical documentation in May.

**Sales:**  Alcatel-Lucent has provided all requested sales information for four accused products.  Alcatel-Lucent should not have to produce sales information for the rest until after Lambda shows it has a good faith basis for its infringement assertions.  As described above, it cannot do so for at least two (Metropolis EON and 1870 TTS).  (Exh. F, 11/12/2012 e-mail Simpson to Felix and Phillips; D.I. 274-6.)  Alcatel-Lucent has provided sales information for the 1695 WSM, formerly named Metropolis WSM.

**Unit sales:**  Alcatel-Lucent has explained to Lambda that the accused products are highly customizable and sold as components.  (*See, e.g.*, Exh. G at pg. 2, 11/14/2012 e-mail Simpson to Felix.)  Therefore unit sales of the type Lambda seeks are difficult, if not impossible, to track. Alcatel-Lucent provided information on sales of components.  Lambda keeps raising the issue, but Alcatel-Lucent cannot be expected to provide information that does not exist.

**Costs of Goods:**  Alcatel-Lucent has produced a "COGS Amount" (Cost of Goods Sold) column with its sales information.  (Exh. G at pg. 3.)  The "dispute" here is unclear.

**Profitability:**  Alcatel-Lucent has explained that it does not track profitability at the product level and that it has provided the available information.  (Exh. G at pg. 3.)  Alcatel-Lucent cannot produce information that it does not have.

---

[2]   As of August 30, 2012, Lambda had not accused these products of infringement, referring to them as "similar products" separate and apart from "accused products."  (Exh. E at pgs. 4-5.)

# SHAW KELLER LLP

Page 4

**Internal sales projections/analyses:**  Alcatel-Lucent has agreed to provide future forecasts (for products that have not been discontinued), and asked Lambda to explain the alleged relevance of past projections given that actual sales information would be provided.  (Exh. G at pg. 2.)  Lambda has not responded.

**Alcatel-Lucent list of customers:**  Though it disputes Lambda's need for the information, Alcatel-Lucent has offered to provide Lambda a list of the customers for the accused products at least twice.  (D.I. 274-7 at 5; Exh. G at pg. 2.)  Alcatel-Lucent only requested in turn that Lambda involve Alcatel-Lucent in any communications with Alcatel-Lucent customers.  Lambda never responded, but this offer remains open.

**Chain of assembly / major components:**  Alcatel-Lucent has identified manufacturing locations and companies for the original five accused products.  (Exh. H at Responses 1 and 2.)  It will do the same for any other products that properly remain in the litigation.  With respect to Lambda's requests directed to "major components or subassemblies," Alcatel-Lucent objected as vague, but at Lambda's request agreed to identify structural documents that would help Lambda focus its request.  Alcatel-Lucent identified these structural documents over two months ago, but Lambda never responded.  (D.I. 274-3 at pg. 4.)

**Requests for proposals/bids/offers:**  Because this information will be burdensome and expensive to collect, and is of limited to no relevance, Alcatel-Lucent offered to produce it if Lambda would pay the associated cost.  (Exh. G at pg. 3.)  Lambda has not responded.

**Information in the possession of LGS:**  As previously explained to Lambda, because the merged Alcatel-Lucent has a foreign parent, upon the merger the U.S. government required the formation of Lucent Government Solutions ("LGS"), a separate company with certain divisions of information and control, to handle sales to the U.S. government.  Alcatel-Lucent cannot freely perform discovery at LGS.  Lambda has not met its burden of showing that Alcatel-Lucent has the legal right and practical ability to obtain LGS documents.  *See, e.g., Glenz v. Sharp Elec. Corp.*, C.A. No. 08-3652(FSH)(MAS), 2010 WL 2758729, at *3 (D.N.J. July 12, 2010) ("[T]he moving party bears the burden of proving the producing party has the requisite control to produce the sought-after documents.").  To respect the government's requirements, Alcatel-Lucent requested that Lambda serve a subpoena on LGS, which Lambda did less than two weeks ago.  (Exh. G at pg. 5.)  There does not appear to be a live dispute on this issue.

**Documents relating to Lambda:**  Alcatel-Lucent has repeatedly told Lambda that it has produced all non-privileged documents it has located regarding Lambda.  If it uncovers any additional responsive non-privileged documents, it will produce those as well.

In summary, Alcatel-Lucent requests that the Court deny Lambda's requested relief.

Respectfully submitted,

*/s/ Andrew E. Russell*

Andrew E. Russell (No. 5382)

cc:    William McCabe (by CM/ECF and email); Andrew Mayo (by CM/ECF and email);
       Victor Felix (by CM/ECF and email); George Pazuniak (by CM/ECF and email)

# Exhibit A

August 3, 2012

Alexandra O. Fellowes
T +1 212 596 9074
F +1 646 728 1696
alexandra.fellowes@ropesgray.com

Robin Phillips
Procopio, Cory, Hargreaves & Savitch LLP
525 B Street, Suite 2200
San Diego, CA 92101

Dear Robin:

I write to summarize our discussion yesterday regarding our July 26, 2012 letter concerning Lambda's production and interrogatory responses.

To begin, our conversation made clear that Lambda has documents ready for production (e.g., the Cisco and Fujitsu licenses) but is not producing these documents until receipt of certain production from Alcatel-Lucent or a promise of a date certain when these documents will be produced. As the plaintiff, and as a general matter, this is an inappropriate basis to withhold documents. I can confirm that Alcatel-Lucent is not withholding any documents that are ready for production. Alcatel-Lucent has been, and continues to be, diligent in its collection and production of documents. For example, with the understandings we reached regarding financial production described below, we will be able to provide a date certain for the production of certain financial information on next Thursday's call, as discussed.

We discussed the following issues that impact financial production by Alcatel-Lucent:

- We will wait for Lambda's independent confirmation that the Lambda Unite is an all-electrical switch, and thus should be removed from the lawsuit as an accused product. We understand that you are waiting for your expert to be able to review the relevant technical documentation.
- Alcatel-Lucent intends to provide, as soon as possible, a letter from ADVA confirming that its manufacture and supply of the 1695 WSM to Alcatel-Lucent is licensed under its license/settlement agreement, along with corroborating documentation regarding ADVA's manufacture of this product for Alcatel-Lucent. Accordingly, Alcatel-Lucent's sales are covered by the exhaustion doctrine. We will then await your confirmation that this accused product should be removed from the lawsuit.
- You agreed that we do not need to produce 'repeater' configuration sales information for the accused products because such a configuration is incapable of infringing.

August 3, 2012

- Regarding pre-suit damages, we strongly urge you to reconsider Lambda's untenable position that pre-suit damages are warranted.

     1. Lambda has already confirmed that it does not mark its products. Lambda's Response to Defendants' Interrogatory 3 states: "Neither LOS nor any of its predecessors in interest ever marked any product sold or offered for sale in the U.S. pursuant to 35 U.S.C. section 287."

     2. Where a patentee has failed to mark a patented product, damages are only recoverable if the infringer received *actual notice* of infringement of apparatus claims. *See, e.g., Minks v. Polaris Industries Inc.*, 546 F.3d 1364, 1375 (Fed. Cir. 2008), *Nike Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998). The emails produced by Lambda regarding communications between Lambda and Alcatel and Lucent (while still separate companies) cannot constitute actual notice under even the most generous standard. Even Victor Felix, Lambda's counsel, categorized these communications as general business discussions about a proposed business venture when discussing laches issues surrounding the parties' amendments of their pleadings. These communications do not mention the '229 patent, any accused product, or contain an infringement assertion of any sort. *See, e.g., Minks v. Polaris Industries Inc.*, 546 F.3d 1364, 1376 (Fed. Cir. 2008) (finding that even "general letters referring to the patent and including an admonishment not to infringe do not constitute actual notice"), *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) (holding that "[a]ctual notice required the affirmative communication of a specific charge of infringement by a specific accused product or device," and finding that a letter which identified a patent and generally advised companies not to infringe was not notice within the meaning of section 287). Any facts or documents supporting actual notice should be available to Lambda. Additionally, I confirm that Alcatel-Lucent, after a reasonable search, has not located any documents that could establish actual notice of the '229 patent. Lambda must come forward with additional evidence or concede that there was no actual notice.

Consequently, because there was no marking and Lambda has produced no evidence of actual notice, Lambda cannot make a colorable claim for pre-suit damages and all financial documents prior to the filing of the suit on June 10, 2010, are irrelevant. Enclosed with this letter is a proposed 'stipulation of no pre-suit damages.'

You stated that Lambda has not updated its response to Alcatel-Lucent's infringement contention interrogatory, which currently only provides a chart for one accused product, because you are waiting for your expert to be able to review the relevant technical documentation. Lambda will also need to update its response in light of today's Claim Construction Report and Recommendation.

You also stated that you are not sure whether Lambda is making a claim for lost profits against Alcatel-Lucent, and that you would provide an update with respect to this issue. As discussed, the answer to this question impacts the relevance of certain other categories of Lambda's document

August 3, 2012

production and interrogatory responses.  For example, regarding the production of claim charts for Lambda's products that Lambda claims practice the claims of the '229 patent, we were unable to reach an agreement.  We understand your position to be that Lambda refuses to produce any claim charts on Lambda's products.  Especially if Lambda seeks lost profits, such claims charts are highly relevant, and we urge Lambda to reconsider its position on this issue.

Additionally, you agreed that Lambda will undertake a search for any documents which still need to be produced regarding the following topics:

- Communications between Lambda Systems and Acacia Patent Acquisition LLC regarding their Exclusive License Agreement.
- Communications with former Defendants (and any other parties) who have entered into settlement/license agreements relating to settlement and licensing of the '229 patent.
- Human resources files concerning Lambda employees who were former Alcatel-Lucent employees.
- Documents relating to Lambda Systems' hiring and employment of former Alcatel-Lucent employees, including communications using personal email accounts (e.g., of Battou).
- Documents concerning Lambda's claim for damages.
- Salaries paid to current and/or former Lambda employees.

You also confirmed that, for the following topics, Lambda has made a full production of all the documents in its possession, and will not be supplementing:

- Documents to support Lambda's conception dates identified for the various claims of the '229 patent.  In particular, you confirmed that there are no documents which exist dated earlier than October 2000 to support the identified conception dates and that support will be limited to the testimony of Abdella Battou.
- Documents to support Lambda's claims of diligence and reduction to practice.  Here again you stated that support will be limited to the testimony of Abdella Battou.
- Documents concerning the specific contribution of the named inventors to the alleged invention of the '229 patent.
- Documents concerning Mr. Tzathas's employee records.
- Documents concerning Lambda's business plans.
- Documents concerning work performed by former Alcatel-Lucent employees at Alcatel-Lucent.
- Documents concerning Lambda's policies regarding IP, including patent applications.
- Documents concerning the evaluation and/or testing of Alcatel-Lucent products.  Specifically, you stated that no testing documents exist and any documents relating to pre-suit diligence are being withheld as privileged.
- Documents relating to compensation paid to current and/or former Lambda employees from royalties from the '229 patent.

- 4 -                                    August 3, 2012

Finally, you agreed that Lambda would consider a stipulation relating to authenticity and publication date. We will draft a proposed stipulation.

Please provide the requested information and documents at your earliest convenience and let us know when Lambda is prepared to further discuss the issues summarized herein.

Best regards,

*Alexandra Fellowes*

Alexandra Fellowes

# Exhibit B

REDACTED

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

<table>
<tr><td>

LAMBDA OPTICAL SOLUTIONS LLC,

               Plaintiff,

v.

ALCATEL-LUCENT USA INC. and
ALCATEL-LUCENT HOLDINGS INC.,

               Defendants.

---

ALCATEL-LUCENT USA INC. and
ALCATEL-LUCENT HOLDINGS INC.,

               Counter-Claimants,

v.

LAMBDA OPTICAL SOLUTIONS LLC,
LAMBDA OPTICAL SYSTEMS CORP., and
ANASTASIOS TZATHAS,

               Counter-Defendants.

</td><td>

C.A. No:10-487-RGA-CJB

</td></tr>
</table>

**LAMBDA'S AND LOS' RESPONSES AND OBJECTIONS TO
ALCATEL-LUCENT'S THIRD SET OF INTERROGATORIES**

Plaintiff and Counter-Defendant LAMBDA OPTICAL SOLUTIONS, LLC ("Lambda")

and LAMBDA OPTICAL SYSTEMS CORP. ("LOS") hereby provide their joint responses to

Defendant and Counter-Claimant ALCATEL-LUCENT USA INC. and ALCATEL-LUCENT

HOLDINGS INC.'s (collectively "Alcatel-Lucent" or "Defendants") Third Set of Interrogatories

as follows:

1

## PRELIMINARY STATEMENT AND OBJECTIONS

Lambda and LOS have not completed their discovery, investigation or preparation for trial. Accordingly, the responses given in response to the Interrogatories herein are without prejudice to the right of Lambda or LOS to introduce subsequently discovered evidence and/or documents. As discovery is ongoing, Lambda and LOS reserve the right to supplement and/or revise this response as additional facts and information come to light.

These responses are made based on the current information and belief of Lambda and/or LOS. The responses provided by Lambda and/or LOS are solely for the purposes of and in relation to the instant litigation. Each response given is subject to all appropriate objections (including, but not limited to, objections concerning competency, relevancy, materiality, propriety and admissibility). All such objections and the grounds therefore are reserved and may be interposed at the time of trial.

Lambda and LOS specifically object to the Instructions, Definitions, and Interrogatories to the extent they seek to impose duties upon Lambda and/or LOS that exceed those required by Rules 26 and 33 of the Federal Rules of Civil Procedure, and/or the Local Rules of this Court.

Lambda and LOS specifically object to each and every Interrogatory on the grounds and to the extent they seek information that in whole or in part are subject to the attorney work-product privilege, the attorney-client privilege, the party work product privilege, the joint-interest privilege, and/or any other applicable privilege or exemptions from production. The identification of any information (including, but not limited to the identification of any person) and/or document shall not be a waiver of any of the above, and the inadvertent disclosure of any privileged matter shall also not constitute a waiver of any of the above.

117799/000001/1592308.01

Lambda and LOS object to each Interrogatory to the extent it seeks information which is not relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, or whose production would place an undue burden on Lambda and/or LOS due to, for example, a request for information that is not limited to a reasonable or relevant time period, or require the examination and summary of business records where the burden of deriving or ascertaining the response or answer will substantially be the same for Defendants.

Lambda and LOS object to each Interrogatory to the extent it attempts to impose a duty on Lambda and/or LOS to respond with information not in their possession, custody, or control; or impose a duty on Lambda and/or LOS to respond with information which is available from other individuals or entities or is otherwise available to the public.

Lambda and LOS object to the Interrogatories, Definitions, and Instructions to the extent they seek information that is unreasonably cumulative or duplicative of other discovery requests, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.  Lambda and LOS further object to each Interrogatory to the extent that it seeks to alter or expand Lambda's and/or LOS's obligations under the Federal Rules of Civil Procedure or Local Rules.

Lambda and LOS object to the Interrogatories, Definitions, and Instructions to the extent they: (i) are compound; (ii) are phrased disjunctively or conjunctively; (iii) include subparts in such a manner that they are unduly burdensome, confusing, or cannot be reasonably answered; or (iv) collectively exceed the number of interrogatories permitted by the Discovery Order entered by the Court for this case.

Lambda and LOS also object to each and every Interrogatory to the extent they call for the disclosure of the private and confidential information and/or documentation of individuals whose rights are protected by, inter alia, applicable state constitutions, and/or Article I, Section 1 and the United States Constitution.   Further, to the extent that the Interrogatories seek information regarding third parties, these third parties must be given notice and the opportunity to object to the disclosure prior to Lambda's and/or LOS's response hereto.

Further, Lambda and LOS object to all Interrogatories to the extent they call for the disclosure of commercially sensitive, confidential, proprietary and/or trade secret information and/or documentation (hereinafter, "Confidential Information").   Lambda and/or LOS will produce any such information subject to D. Del. L.R. 26.2 and any protective order entered by the Court.

Lambda and LOS object the Interrogatories as irrelevant to any claim or defense asserted in this case and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding Mr. Darrell Sager and Mr. Mario Alvarez.   Lambda's and LOS's position that Mr. Darrell Sager and Mr. Mario Alvarez were never named inventors in the application that resulted in U.S. Patent No. 6,973,229 (the "'229 Patent").

This Preliminary Statement is incorporated into the response to each Interrogatory, whether or not mentioned in each response.   An objection to a specific Interrogatory does not imply that information and/or documents responsive to the Interrogatory exist. A response to an Interrogatory does not constitute an admission that the information and/or documents are relevant to the litigation or would be admissible at trial.   Lambda and LOS do not admit, adopt, or acquiesce in any factual or legal contention, assertion, or characterization that is contained in

4

the Interrogatories.  Subject to this Preliminary Statement, Lambda and LOS respond to Alcatel-Lucent's Third Set of Interrogatories as follows:

## RESPONSES

## INTERROGATORY NO. 16:

Describe in detail the entire basis for Lambda's assertion that it is entitled to pre-suit damages and describe in detail the total amount and method by which Lambda calculates (or intends to calculate) the pre-suit damages claimed in this action, e.g., the time period in which Lambda alleges that damages have accrued or are accruing to the benefit of Lambda by virtue of such alleged infringement, and the identity of all documents and things (by document production number) and persons upon which Lambda may rely in support of such claims, including describing in detail any communications, and identifying all documents and things (by document production number), that Lambda asserts constitute actual notice of infringement to Alcatel-Lucent.

## RESPONSE TO INTERROGATORY NO. 16:

Lambda and LOS incorporate the Preliminary Statement and General Objections. Lambda and LOS further object on the ground that this interrogatory is compound in that it consists of three interrogatories: one concerning entitlement to pre-suit damages; a second concerning method of calculation and total amount of pre-suit damages claimed; and a third concerning actual notice of infringement.  Lambda and LOS object to this interrogatory to the extent it seeks information subject to attorney-client privilege, attorney work-product protection, party work-product protection and/or the common interest privilege.  Lambda and LOS also object on the basis that the interrogatory is premature as discovery is ongoing, fact and expert discovery is not complete, and no expert analysis has yet been completed.

Subject to and without waiving the foregoing specific objections, the Preliminary Statement and General Objections, Lambda and LOS further respond as follows:

Since January 2007, LOS has not sold any of its products, and therefore had no duty to mark its products. Lambda and LOS object to this interrogatory as being premature insofar as it requests the total amount of Lambda's damages and method of calculation. Alcatel-Lucent has yet to complete its production of information necessary for Lambda and LOS to respond to this interrogatory. For example, Alcatel-Lucent has yet to produce the following documents/information relating to the Accused Products (i) sales information, e.g., Alcatel-Lucent's sales information for the Accused Products from 2007 through 2010; (ii) licenses in which Alcatel-Lucent was the licensee or licensor of optical switching technology, the investigation of which Alcatel-Lucent has relayed is still ongoing; (iii) information regarding royalty payments, either to Alcatel-Lucent or by Alcatel-Lucent (e.g., royalty payments to ADVA); (iv) requests for bids/proposals and responses thereto; (v) identities of Alcatel-Lucent's customers and breakdown of sales information to each customer by quantity, price and month; and (vi) marketing documents sent to Alcatel-Lucent's customers, all of which are necessary for Lambda to calculate damages. Furthermore, Lambda's damages are subject to expert opinion, and expert reports are not yet due (according to the present schedule, expert reports are due in August 2013). Lambda claims damages sufficient to compensate it for Alcatel-Lucent's infringement, but in no event less than a reasonable royalty for the use of the inventions claimed in the '229 Patent for the allowable statutory or legal period, in addition to treble damages for willful infringement, interests and all recoverable costs of this suit.

Lambda may rely on at least the following people to prove the damage claims: Irfan Ali, Marc Frechette, and Lambda's damages experts. With regard to documents, Lambda may rely

6

on at least the following: all patent license agreements produced in this case by the parties, including patent licenses produced by third parties in response to third-party subpoenas, and on publicly available information regarding licensing of optical switching technology.

As discovery is ongoing, Lambda and LOS explicitly reserve their rights to supplement and amend the response to this interrogatory at a later date.

Respectfully submitted,

PROCOPIO, CORY, HARGREAVES
& SAVITCH LLP

Dated: October 4, 2012      By: _____

Anthony J. Dain (CA Bar No. 098947)
Victor M. Felix (CA Bar No. 179622)
Robin L. Phillips (CA Bar No. 248016)
Procopio, Cory, Hargreaves & Savitch LLP
525 B Street, Suite 2200
San Diego, CA 92101-4469
Tel: (619) 238-1900/Fax: (619) 235-0398
Email: ajd@procopio.com
Email: vmf@procopio.com
Email: rlp@procopio.com

7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 4, 2012, **LAMBDA'S AND LOS'**
**RESPONSES AND OBJECTIONS TO ALCATEL-LUCENT'S THIRD SET OF**
**INTERROGATORIES** was served upon the below-named counsel of record at the address and
in the manner indicated:

John W. Shaw, Esquire                                    VIA ELECTRONIC MAIL
Andrew E. Russell, Esquire
Shaw Keller LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
E-mail: jshaw@shawkeller.com
E-mail: arussell@shawkeller.com
E-mail: skalcatellambda@shawkeller.com
*Attorney for Alcatel-Lucent USA Inc.,*
*Alcatel Lucent Holdings Inc.*

Sasha G. Rao, Esquire                                    VIA ELECTRONIC MAIL
Brandon H. Stroy, Esquire
Ropes & Gray, LLP
1900 University Avenue
East Palo Alto, CA 94303
E-mail: sasha.rao@ropesgray.com
E-mail: brandon.stroy@ropesgray.com
*Attorney for Alcatel-Lucent USA Inc.,*
*Alcatel Lucent Holdings Inc.*

William J. McCabe, Esquire                               VIA ELECTRONIC MAIL
Todd M. Simpson, Esquire
Ropes & Gray, LLP
1211 Avenue of the Americas
New York, NY 10036
E-mail: william.mccabe@ropesgray.com
E-mail: todd.simpson@ropesgray.com
*Attorney for Alcatel-Lucent USA Inc.,*
*Alcatel Lucent Holdings Inc.*

Sean T. O'Kelly, Esquire                                 VIA ELECTRONIC MAIL
O'Kelly & Ernst, LLC
1000 N. West Street, Suite 1200
Wilmington, DE 19801
E-mail: sokelly@oelegal.com
*Attorney for Anastasios Tzathas*

Dated:  October 4, 2012

_____
Victor M. Felix

8

# Exhibit D

REDACTED

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LAMBDA OPTICAL SOLUTIONS LLC, | |
| Plaintiff, | C.A. No:10-487-RGA-CJB |
| v. | |
| ALCATEL-LUCENT USA INC. and ALCATEL-LUCENT HOLDINGS INC., | |
| Defendants. | |
| ALCATEL-LUCENT USA INC. and ALCATEL-LUCENT HOLDINGS INC., | |
| Counter-Claimants, | |
| v. | |
| LAMBDA OPTICAL SOLUTIONS LLC, LAMBDA OPTICAL SYSTEMS CORP., and ANASTASIOS TZATHAS, | |
| Counter-Defendants. | |

## LAMBDA OPTICAL SOLUTIONS, LLC'S FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO ALCATEL-LUCENT USA INC. AND ALCATEL-LUCENT HOLDINGS INC.

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff Lambda Optical Solutions, LLC, by its undersigned attorneys, hereby requests that Defendants Alcatel-Lucent USA Inc. and Alcatel-Lucent Holdings Inc. (collectively "Alcatel" or "Defendants") respond to these Common Requests for Production of Documents within the time prescribed by the Federal Rules of Civil Procedure, and produce to lead counsel for each Defendant the following documents and things within thirty (30) days of service hereof, or at such other time and place as may be mutually agreed upon by the parties, in accordance with the Definitions and Instructions set forth herein.

## **DEFINITIONS**

1.      The terms "YOU," "YOUR," "ALCATEL," or "DEFENDANT" shall refer to defendant ALCATEL-LUCENT USA, INC., its predecessor company or companies, and other legal entities which are wholly or partially owned or controlled by ALCATEL-LUCENT USA, INC., either directly or indirectly, and each of their respective present or former directors, officers, employees, partners, agents, consultants, experts, representatives, and attorneys, as well as all other individuals or business entities in the employ of or otherwise acting on behalf of ALCATEL-LUCENT USA, INC..

2.      The terms "ENTITY" or "ENTITIES" shall include any firm, association, organization, partnership, business, trust, corporation, proprietorship, scientific or academic establishment, company, governmental agency, or organizational unit thereof, and any other organization of any type and nature, including U.S. and foreign.

3.      The term "DOCUMENT" means all matter that is written, typed, printed, reproduced, or recorded (including graphic, aural, mechanical or electronic records), including, but not limited to:  anything which would be a "writing" or "recording" as defined in Rule 1001(1) of the Federal Rules of Evidence or a "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure, originals and copies of letters, notes, notebooks, minutes, memoranda of telephone calls, correspondence, drafts, messages, telegrams, periodicals, brochures, leaflets, bonds, files, records, reports, working papers, routing slips, diaries, calendars, appointment books, log books, time sheets, budgets, estimates, studies, checks, statements, receipts, returns, books, interoffice and intraoffice communications, notations of any sort of conversations, bulletins, computer printouts, e-mail, teletypes, telefaxes, photographs, charts, graphs, microfiche, video tapes, motion pictures, tapes, cassettes, disks, recordings,

2

computer-stored data, worksheets, contracts, agreements, bids, offers, proposals, quotations, tables, compilations, tabulations, tallies, diagrams, drawings, maps, illustrations or statistical analyses, by whomever prepared now or formerly in Plaintiffs' actual or constructive possession, custody or control.  If a document has been prepared in several copies, or if additional copies are made that are not identical, or are no longer identical by reason of subsequent notation or other modification of any kind whatsoever, including, but not limited to, notations on the backs of pages thereto, each non-identical copy is a separate document.

4.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request any information or document which might otherwise be construed to be outside of its scope.

5.     The terms "RELATED," "RELATED TO," and "RELATING TO" shall be construed in the broadest sense to include refer to, summarize, reflect, constitute, contain, embody, mention, concern, show, comprise, evidence, discuss, describe, comment upon, consisting of, in connection with, or pertaining to.

6.     The use of a verb in any tense shall be construed as the use of that verb in all other tenses necessary to bring within the scope of the interrogatory all responses that might otherwise be construed as outside its scope.

7.     A plural noun shall be construed as a singular noun and a singular noun shall be construed as a plural noun whenever necessary to bring within the scope of the interrogatory all responses that might otherwise be construed as outside its scope.

8.     The term "each" shall be construed to include "every," and vice versa.

9.     The term "any" shall mean "any and all." The term "all" herein also shall mean "any and all."

10.     The term "ACCUSED PRODUCTS" means any product made, have made, used, leased, offered for lease, sold, imported, or offered for sale by, or on behalf of, ALCATEL that Lambda alleges infringe the '229 Patent as more fully described in Lambda's Responses to ALCATEL's First Set of Interrogatories, including, but not limited to:

- Alcatel-Lucent 1625 LambdaXtreme Transport

- Alcatel-Lucent 1675 Lambda Unite Multiservice Switch

- Alcatel-Lucent 1695 Wavelength Services Manager

- Alcatel-Lucent 1696 Metrospan Metro-WDM

- Alcatel-Lucent 1696 Metrospan ROADM

11.     The term "ACCUSED FEATURES" means any feature of the ACCUSED PRODUCTS identified as infringing features in the responses to ALCATEL's Interrogatories, including, but not limited to, ALCATEL's all-optical switching technology and the features thereof.

12.     The term "SIMILAR PRODUCTS" means any product made, have made, used, leased, offered for lease, sold, imported, or offered for sale by, or on behalf of, ALCATEL which is the same as or substantially similar to, any of the ACCUSED PRODUCTS or contains features that are the same or substantially the same as THE ACCUSED FEATURES, including, but not limited to:

- Alcatel-Lucent 1626 Light Manager

- Alcatel-Lucent Metropolis Enhanced Optical Networking (EON)

- Metropolis Wavelength Services Manager (WSM)

- Alcatel-Lucent 1830 Photonic Service Switch (PSS)

- Alcatel-Lucent 1850 Transport Service Switch (TSS)

117799/000001/1573137.01

- Alcatel-Lucent 1870 Transport Tera Switch (TTS)

These are intended to be continuing requests to the full extent allowed by the Federal Rules of Civil Procedure.   To the extent that ALCATEL acquires, or becomes aware of additional documents or information responsive to these requests, ALCATEL is required to supplement its responses to the requests.

## **INSTRUCTIONS**

1.      If in responding to this Request for Production, ALCATEL encounters any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

2.      Whenever in this Request you are asked to identify or produce a document which is deemed by you to be properly withheld from production:

(a)      If you are withholding the document under a claim of privilege (including but not limited to the attorney-client privilege and the work product doctrine), provide the information set forth in Federal Rule of Civil Procedure 26(b)(5), including:

(i)      the type of document;

(ii)     the general subject matter of the document;

(iii)    the date of the document;

(iv)     such other information as is sufficient to identify the document, including, where appropriate, the author, addressees, custodian, and any other recipient of the document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other, in a manner that, without revealing the information claimed to be protected, will enable this party to assess the applicability of the privilege or protection claimed by you;

5

(v)      the nature and basis of the privilege claimed

(vi)      if the privilege claimed is the attorney-client privilege, an indication of which author(s) or addressee(s) is/are attorney(s); and

(vii)     any other information necessary to support the claim of privilege;

3.       When a document contains both privileged and non-privileged material, the nonprivileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

4.       If the requested documents are maintained in a file, the file folder is to be included in the request for production of those documents.

5.       To the extent information is maintained in hard copy form, the information may be produced in electronic form if feasible.

6.       If a document is in a language other than English, produce both the original and any translation thereof if available.

7.       The time period covered by all the document requests below is 1999 to the present, unless otherwise indicated by the request.

8.       These requests are ongoing and the responses provided must be supplemented to the extent required by Federal Rule of Civil Procedure 26(e).

## REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS

**REQUEST FOR PRODUCTION NO. 47:**

DOCUMENTS sufficient to disclose where the SIMILAR PRODUCTS and major subassemblies or components are manufactured, assembled and tested including, but not limited to, DOCUMENTS sufficient to disclose where (in which city, state and country) the SIMILAR PRODUCTS and the major subassemblies or components of the SIMILAR PRODUCTS are manufactured, assembled and tested.

**REQUEST FOR PRODUCTION NO. 48:**

DOCUMENTS sufficient to disclose which ENTITIES manufacture, assemble and test the SIMILAR PRODUCTS including, but not limited to:

(a)     DOCUMENTS sufficient to disclose which ENTITIES manufacture, assemble and test major subassemblies or components of the SIMILAR PRODUCTS; and

(b)     DOCUMENTS sufficient to show supply contracts and/or agreements with the original equipment manufacturers for each SIMILAR PRODUCT.

**REQUEST FOR PRODUCTION NO. 49:**

For each SIMILAR PRODUCT, the following DOCUMENTS from any qualification testing required by a customer, including the following categories of DOCUMENTS:

(a)     Test reports, test charts, and any accompanying notes, memoranda, analysis, photographs, video and audio;

(b)     Notes or other documentation regarding the personnel performing any of the qualification testing; and

(c)     Each test result, simulation result, white paper, product manual, requirement DOCUMENT, technical manual, data book, product sheet, specification or

7

instruction that contains the words "optical switch," "optical switching," or "optical network."

**REQUEST FOR PRODUCTION NO. 50:**

All DOCUMENTS RELATING TO the importation (into the United States) and/or exportation (out of the United States) of the SIMILAR PRODUCTS including, but not limited to:

    (a)    DOCUMENTS RELATING TO the importation (into the United States) and/or exportation (out of the United States) of major subassemblies or components of the SIMILAR PRODUCTS; and

    (b)    Reports, correspondence and other DOCUMENTS that show in which countries YOUR SIMILAR PRODUCTS have been sold.

**REQUEST FOR PRODUCTION NO. 51:**

DOCUMENTS sufficient to summarize the sales of the SIMILAR PRODUCTS from 2007 to the present including, but not limited to, DOCUMENTS sufficient to summarize:

    (a)    the quantity of SIMILAR PRODUCTS sold in the United States or abroad by month, quarter, and year;

    (b)    when the SIMILAR PRODUCTS were sold by month, quarter, and year;

    (c)    the sales price, pricing and methods of pricing of the SIMILAR PRODUCTS by month, quarter, and year from their release to the present including, but not limited to:  DOCUMENTS RELATING TO the prices at which the SIMILAR PRODUCTS have been sold, are sold, are expected to be sold, DOCUMENTS RELATING TO YOUR pricing strategies, DOCUMENTS RELATING TO the identity of customers and potential customers, DOCUMENTS RELATING TO

8

requests for proposals or bids and responses thereto, and DOCUMENTS RELATING TO price elasticity, pricing decisions, factors affecting prices (for example, demand), and price comparisons;

(d)     sales projections and anticipated revenue from SIMILAR PRODUCTS by month, quarter, and year from their release to the present;

(e)     actual revenue data and profit and loss statements of each SIMILAR PRODUCTS by month, quarter, and year;

(f)     income statements by month, quarter, and year for the business segment, group and/or divisions that include a SIMILAR PRODUCT; and

(g)     DOCUMENTS sufficient to show whether YOUR sales of the SIMILAR PRODUCTS improved the sales of YOUR other products including, but not limited to:  sales comparison charts, regular sales charts, internal product analyses, marketing assessments, market analyses, product sales projections, and budget forecasts;

(h)     each of YOUR quarterly and annual reports, and each of YOUR annual and quarterly presentations to financial analysts; and

(i)     DOCUMENTS sufficient to show company financial statements and annual reports, audited and unaudited, since 2005.

(j)     DOCUMENTS sufficient to show any and all royalties YOU have received that stem from intellectual property (patents, trademarks and copyrights) associated with the SIMILAR PRODUCTS.

**REQUEST FOR PRODUCTION NO. 52:**

All financial DOCUMENTS RELATING TO the cost of doing business associated with the SIMILAR PRODUCTS and each of the key components of the costs of goods sold from their release to the present, including, but not limited to:

    (a)    production costs;

    (b)    research and development costs;

    (c)    marketing and promotional costs; and

    (d)    manufacturing costs.

    (e)    royalty costs, including, but not limited to royalties YOU pay for intellectual property rights or licenses in order to enable YOU to do business associated with the SIMILAR PRODUCTS.

**REQUEST FOR PRODUCTION NO. 53:**

All DOCUMENTS RELATING TO the design of the SIMILAR PRODUCTS including, but not limited to:

    (a)    DOCUMENTS RELATING TO operations, capabilities, algorithms, functions, methods, software, hardware, product requirements, product criteria, benefit, use or implementation of optical switches or optical networks with one or more of the SIMILAR PRODUCTS;

    (b)    DOCUMENTS RELATING TO the design, implementation, or use of reconfigurable optical add-drop multiplexer (ROADM) shelf/shelves in the SIMILAR PRODUCTS, including but not limited to:

        i.    DOCUMENTS RELATING TO different possible configurations of ROADMs in the SIMILAR PRODUCTS for various purposes;

ii.     DOCUMENTS RELATING TO the use of amplifier cards, multiplexer cards and demultiplexer cards, ROADM cards and all other shelf-compatible cards in the SIMILAR PRODUCTS;

iii.    DOCUMENTS RELATING TO the configuration of the SIMILAR PRODUCTS as optical cross-connects;

iv.     DOCUMENTS RELATING TO the configuration of the SIMILAR PRODUCTS as termination/end points for wavelength-division multiplexing (WDM) traffic;

v.      DOCUMENTS RELATING TO the configuration of the SIMILAR PRODUCTS as launch points for WDM traffic;

vi.     DOCUMENTS RELATING TO the configuration of the SIMILAR PRODUCTS as add-drop multiplexers;

vii.    DOCUMENTS RELATING TO the design, use or implementation of ROADM shelves in the above-mentioned configurations of the SIMILAR PRODUCTS; and

viii.   DOCUMENTS RELATING TO the interconnection of cards in the above-mentioned configurations of the SIMILAR PRODUCTS;

(c)     DOCUMENTS RELATING TO access interface cards (that clients must use to gain access to the network), which are compatible with reconfigurable optical add-drop multiplexers (ROADMs) in the SIMILAR PRODUCTS, including, but not limited to:

i.      DOCUMENTS RELATING TO the inputs and outputs (both optical and electrical) of access interface cards in the SIMILAR PRODUCTS;

    ii.    DOCUMENTS RELATING TO the internal optics that identify all optical components of access interface cards in the SIMILAR PRODUCTS, including fiber and connectors from transmitters outward (transmit ports) and fiber and connectors from input ports toward photodiodes (receiver ports);

(d)    DOCUMENTS RELATING TO the inputs and outputs (both optical and electrical) of all cards that may be used in the SIMILAR PRODUCTS;

(e)    DOCUMENTS RELATING TO the use or implantation of reconfigurable optical add-drop multiplexer (ROADM) cards in the SIMILAR PRODUCTS including, but not limited to:

    i.    DOCUMENTS RELATING TO ROADM cards that identify functional units and their relationships, including input/output connectors, imaging optics, grating or other demultiplexing components, switch engine array(s), grating or other multiplexing components for outgoing signals and output fibers;

    ii.    DOCUMENTS RELATING TO whether ROADM cards in the SIMILAR PRODUCTS may be based on micro-electro-mechanical systems (MEMS) or other systems; and

    iii.    DOCUMENTS RELATING TO the internal structure of ROADM cards, including DOCUMENTS RELATING TO internal wavelength selective switching (WSS) which identify multiplexing and demultiplexing components, optical switch engines, input and output ports and any internal fiber components;

(f)    DOCUMENTS RELATING TO configuration of reconfigurable optical add-drop multiplexers (ROADMs) in the SIMILAR PRODUCTS with regard to both fixed-wavelength add/drop and reconfigurable wavelength channel add/drop;

(g)    DOCUMENTS RELATING TO the flow of traffic (signals/wavelengths) through the SIMILAR PRODUCTS, including, but not limited to:

    i.    DOCUMENTS RELATING TO the flow of express traffic (traffic in which the information carried is not modified by the SIMILAR PRODUCTS) through the SIMILAR PRODUCTS including how express traffic can be controllably separated from add/drop traffic;

    ii.    DOCUMENTS RELATING TO how the network management system routes (i) wavelengths in transport, and  (ii) wavelengths to-and-from the client side; and

    iii.    DOCUMENTS RELATING TO any graphical user interfaces that permit an operator to change routing using the SIMILAR PRODUCTS, including DOCUMENTS explaining how client input can affect wavelength-routing;

(h)    DOCUMENTS RELATING TO how fixed-wavelength add and drop can be achieved in the SIMILAR PRODUCTS, as well as add/drop via keyboard (as opposed to electronic interface control) in the SIMILAR PRODUCTS, including, but not limited to:

    i.    DOCUMENTS RELATING TO the architecture of add/drop use in 2-degree and higher reconfigurable optical add-drop multiplexer (ROADM) configurations, and all types of configurations available for express and add/drop in the transport system shelf; and

(i)     DOCUMENTS RELATING TO any cards that permit pass-through of wavelengths (pass-through cards) without interface cards in the SIMILAR PRODUCTS, including, but not limited to:

     i.     the internal structure of pass-through cards; and

     ii.     the internal optical processing in pass-through cards, whether for performance monitoring, sampling, amplification or some other optical function;

(j)     DOCUMENTS RELATING TO research and development of the SIMILAR PRODUCTS including, but not limited to: documents regarding scheduling, milestones and dates, documents regarding project status and decision making, notes, notebooks, lab notebooks, communications, phone logs, emails, meeting agendas, meeting minutes, tutorials, memoranda, project management plans, including team foundation server documents or project server documents, calendars, deliverables, progress reports, action item lists, design reviews, project histories, test results, flowcharts and UML, quality guidelines, design specifications, functional specifications, product specifications, whiteboard notes, technical white papers, executive summaries, software overviews, and software architectural notes; customer surveys (including commissioned surveys); third-party industry/market reports, competitive intelligence and/or analysis reports (internal and external); and

(k)     DOCUMENTS RELATING TO training for or servicing of the SIMILAR PRODUCTS, including, but not limited to:  training materials provided to

14

technical support persons, customer relations persons, field representatives, sales

representatives, account representatives, or customers.

DOCUMENTS responsive to this request include, but are not limited to: diagrams, design

specifications, functional specifications, engineering documents, engineering planning

documents, block diagrams, flowcharts, source code, user manuals, product manuals,

technical manuals, test results, schematics, technical drawings, design documents,

marketing materials, brochures, white board notes, lab note books, board meetings, notes,

help files, service guides, user guides, technical support guides, information packets,

white papers, requirement documents, data books, product sheets, and instructions.

**REQUEST FOR PRODUCTION NO. 54:**

All DOCUMENTS RELATING TO the value, desirability or benefits that consumers

may derive from employing the SIMILAR PRODUCTS, including, but not limited to,

DOCUMENTS provided to YOUR potential and actual customers that describe the features,

operation, advantages or user selectability of one or more of YOUR SIMILAR PRODUCTS.

**REQUEST FOR PRODUCTION NO. 55:**

All DOCUMENTS RELATING TO marketing and/or promotion of the SIMILAR

PRODUCTS, including, but not limited to:

(a)     press releases;

(b)     campaigns;

(c)     marketing materials;

(d)     advertisements;

(e)     presentations to investors and/or prospective investors;

15

(f)     presentations and product strategy provided by upper management and/or the Board of Directors;

(g)     investment analyst reports; and

(h)     other promotional materials RELATING TO the SIMILAR PRODUCTS including, but not limited to, any communications between YOUR product's marketing group(s) and product development group(s) RELATING TO the SIMILAR PRODUCTS.

**REQUEST FOR PRODUCTION NO. 56:**

All DOCUMENTS RELATING TO licensing agreements or assignments between YOU and any third parties that relate to the SIMILAR PRODUCTS including, but not limited to:

(a)     licenses entered by YOU;

(b)     licenses issued by YOU;

(c)     negotiations between YOU and any third parties;

(d)     draft agreements;

(e)     negotiation discussions and emails;

(f)     patent and technology licenses (both license-in/license-out) covering any product that incorporates optical switches or optical networks, including industry standard and patent pool licenses;

(g)     every patent assignment/asset purchase agreement for the business segment and/or group that includes the SIMILAR PRODUCTS; and

(h)     policies regarding the royalty rate for the SIMILAR PRODUCTS.

**REQUEST FOR PRODUCTION NO. 57:**

All DOCUMENTS sufficient to identify the person(s) most knowledgeable about the SIMILAR PRODUCTS in:

(a)     research and development;

(b)     design;

(c)     production;

(d)     manufacturing;

(e)     marketing, advertising or promotion;

(f)     pricing;

(g)     sales and licensing;

(h)     importation and exportation;

(i)     distribution;

(j)     testing;

(k)     implementation;

(l)     customer relations; and

(m)     for each such person, DOCUMENTS sufficient to determine the title(s) or position(s) held by such person, the time periods during which such person held such position(s), and the responsibilities of such person to that position.

**REQUEST FOR PRODUCTION NO. 58:**

Organization charts that show the organization of YOUR employees or agents who are/were involved with the design, marketing, engineering, development, manufacture or sale of one or more of YOUR SIMILAR PRODUCTS.

**REQUEST FOR PRODUCTION NO. 59:**

All DOCUMENTS, including, without limitation, analyses, reports, and studies referring or RELATING TO the characteristics and scope of the market in which you provided any of the SIMILAR PRODUCTS and ancillary services, including, without limitation, consumer surveys, analysis of competitors, market share information, or market research prepared by YOU or any party.

**REQUEST FOR PRODUCTION NO. 60:**

All DOCUMENTS that constitute, mention, discuss, refer, or RELATE TO YOUR business plans, strategic plans, annual plans, purchase plans, marketing plans, pricing strategies, pricing guidelines, as well as all amendments or updates to such plans with respect to the SIMILAR PRODUCTS, including but not limited to DOCUMENTS RELATING TO sales and/or provision of the SIMILAR PRODUCTS and ancillary services, and reports RELATING TO sales forecasts.

Respectfully submitted,

PROCOPIO, CORY, HARGREAVES &
   SAVITCH

Dated: August 30, 2012

By: _s/ Robin L. Phillips_

Anthony J. Dain (CA Bar No. 098947)
Victor M. Felix (CA Bar No. 179622)
Robin L. Phillips (CA Bar No. 248016)
Procopio, Cory, Hargreaves & Savitch LLP
525 B Street, Suite 2200
San Diego, CA 92101-4469
Tel: (619) 238-1900
Fax: (619) 235-0398
Email: ajd@procopio.com
Email: vmf@procopio.com
Email: rlp@procopio.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 30, 2012, **LAMBDA OPTICAL SOLUTIONS, LLC'S FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO ALCATEL-LUCENT USA INC. AND ALCATEL-LUCENT HOLDINGS INC.** was served upon the below-named counsel of record at the address and in the manner indicated:

John W. Shaw, Esquire                                   VIA ELECTRONIC MAIL
Andrew E. Russell, Esquire
Shaw Keller LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
E-mail: jshaw@shawkeller.com
E-mail:  arussell@shawkeller.com
E-mail:  skalcatellambda@shawkeller.com
***Attorney for Alcatel-Lucent USA Inc.,***
***Alcatel Lucent Holdings Inc.***

Sasha G. Rao, Esquire                                   VIA ELECTRONIC MAIL
Brandon H. Stroy, Esquire
Ropes & Gray, LLP
1900 University Avenue
East Palo Alto, CA 94303
E-mail: sasha.rao@ropesgray.com
E-mail: brandon.stroy@ropesgray.com
***Attorney for Alcatel-Lucent USA Inc.,***
***Alcatel Lucent Holdings Inc.***

William J. McCabe, Esquire                              VIA ELECTRONIC MAIL
Todd M. Simpson, Esquire
Ropes & Gray, LLP
1211 Avenue of the Americas
New York, NY 10036
E-mail: william.mccabe@ropesgray.com
E-mail: todd.simpson@ropesgray.com
***Attorney for Alcatel-Lucent USA Inc.,***
***Alcatel Lucent Holdings Inc.***

Sean T. O'Kelly, Esquire                                VIA ELECTRONIC MAIL
O'Kelly & Ernst, LLC
1000 N. West Street, Suite 1200
Wilmington, DE 19801
E-mail: sokelly@oelegal.com
***Attorney for Anastasios Tzathas***

Dated:  August 30, 2012                                 *s/Robin L. Phillips*
                                                        Robin L. Phillips

19

# Exhibit F

## Simpson, Todd

| | |
|---|---|
| **From:** | Simpson, Todd |
| **Sent:** | Monday, November 12, 2012 10:15 AM |
| **To:** | Felix, Victor M. (victor.felix@procopio.com); Phillips, Robin L. (robin.phillips@procopio.com) |
| **Cc:** | McCabe, William, J. |
| **Subject:** | Lambda v. Alcatel-Lucent:  Lambda's Infringement Contentions |

Victor and Robin,

Your updated infringement contention interrogatory response states:

"Attached hereto as Appendices A, B and C are updated claim charts demonstrating infringement of the '229 patent by the following products:
• Alcatel-Lucent 1625 LambdaXtreme Transport
• Alcatel-Lucent 1695 Wavelength Services Manager
• Metropolis Wavelength Services Manager (WSM)
• Alcatel-Lucent Metropolis Enhanced Optical Networking (EON)
• Alcatel-Lucent 1696 Metrospan Metro-WDM
• Alcatel-Lucent 1696 Metrospan ROADM"

Based upon our review, Appendices A, B, and C do not, in fact, contain infringement contentions for the Metropolis EON or 1696 Metro-WDM accused products.  Please clarify.

Your responses also recognize that you did not provide infringement contentions for a number of other Alcatel-Lucent products.  I note that, as I have stated in past discussions and as reflected by our responses to Lambda's document requests, we have produced technical documentation about these products and will not provide further potentially irrelevant and burdensome discovery until after we receive infringement contentions.

Regards,
Todd

**Todd M. Simpson**
**ROPES & GRAY LLP**
T +1 212 596 9759 | F +1 646 728 2674
1211 Avenue of the Americas
New York, NY 10036-8704
todd.simpson@ropesgray.com
www.ropesgray.com

# Exhibit G

**Simpson, Todd**

| | |
|---|---|
| **From:** | Simpson, Todd |
| **Sent:** | Wednesday, November 14, 2012 8:15 PM |
| **To:** | Felix, Victor M. |
| **Cc:** | McCabe, William, J.; Rao, Sasha; Stroy, Brandon; Felix, Victor M.; Phillips, Robin L.; Mayo, Andrew C.; jshaw@shawkeller.com; Hylander, Nadine A.; Dain, Anthony J. |
| **Subject:** | RE:  Lambda:  Discovery, depositions and subpoenas |

Victor,

My responses to the outline of discovery topics you raise are inserted into your email below.  Many of the topics were addressed in my October 22, 2012 Letter to you and Robin (a letter to which you never responded) and/or have been otherwise addressed on multiple occasions in the past.  Your kitchen-sink approach to pulling together a list of discovery disputes is further evidence that our primary concern is well-founded – Lambda is pushing for extensive, burdensome, and expensive discovery without accounting for either the value of the discovery to the litigation or your own calculation of the total worth of this case reflected, e.g., in past settlement offers.

With respect to the discovery extension, Alcatel-Lucent will not agree to another wholesale extension.  We have already extended discovery in this case, and there is no reason to extend it again.  Lambda has had ample time to prepare its case and appears to have done little with the time it has had.  But, to the extent discovery that is properly noticed before the current close cannot be completed by the close of discovery, Alcatel-Lucent agrees that the parties should be flexible in completing this discovery beyond the official close.  Alcatel-Lucent would not object to, for example, scheduling depositions properly noticed under the current schedule into January, if necessary.

Finally, Alcatel-Lucent intends to bring the discovery disputes I raised in my October 22nd Letter to the Court as well so that the parties can resolve all outstanding discovery issues.  These issues include, but are not limited to, missing infringement contentions, emails regarding Lambda Solutions' "Settlement and Patent License Agreement" with ADVA that Lambda had previously agreed to produce, and Lambda Systems' early technical development documents.  Lambda bears the burden of proving infringement and your past and continued delay in evaluating the merits of your case have caused Alcatel-Lucent unneeded discovery expense and burden.

Please coordinate with John Shaw on a call to Magistrate Burke's chambers regarding the scheduling of a discovery dispute teleconference.

Regards,
Todd

**From:** Felix, Victor M. [mailto:victor.felix@procopio.com]
**Sent:** Wednesday, November 14, 2012 1:07 AM
**To:** Simpson, Todd
**Cc:** McCabe, William, J.; Rao, Sasha; Stroy, Brandon; Felix, Victor M.; Phillips, Robin L.; Mayo, Andrew C.; jshaw@shawkeller.com; Hylander, Nadine A.; Dain, Anthony J.
**Subject:** Lambda: Discovery, depositions and subpoenas

Todd,

As we discussed yesterday, there are several outstanding issues that require a prompt resolution.  I will try to list them in this email in no particular order of importance:

**1.  Lambda's Subpoenas**:

Last Friday I asked whether you would accept service of the subpoenas we issued.  We have not heard back from you.  We need to hear from you by tomorrow at 10 am (pacific) whether you will accept service or not.  If we do not hear by then we will send out the subpoenas for service.

**[You did hear back from me.  We received the subpoenas late on Friday and the next business day on Monday during our call I agreed to accept service on behalf of George Simmons.  As I stated in my email earlier today, I have confirmed that we will accept service on behalf of Lisa Whittington and Jeffrey Kestler.  Since that email, I confirmed we have been authorized by LGS to accept service on behalf of Rick Gilmore and Jim Powers as well.]**

**2.  Discovery issues**:

Alcatel has not provided the following

- **Sales information:**
  - List of customers for the Accused Products.  **[My October 22nd Letter stated that we would agree to provide a list of customers if Lambda agrees to include Alcatel-Lucent in communications with such customers.  You have not responded.]**
  - No breakdown of limited summary sales information that was provided for the Accused Products for units sold (quantity), or average unit sale price  **[My understanding is that we have provided the best available quantity information along with our sales information.  As I have explained in the past, quantity is a difficult (or impossible) thing to track because the Accused Products are sold as a large number of components and are highly configurable.]**
  - No sales projections  **[Do you seek projections for the future?  Or are you seeking past projections where we have already provided actual sales?  If the latter, please explain the relevance.  We will agree to search for future projections.]**
  - No marketing or promotional materials for the Accused Products  **[We have discussed this in the past.  We have produced product brochures, datasheets, and some powerpoint presentations regarding the Accused Products.  These are not consumer products; we do not advertise like Apple does.  We have performed a reasonable search and are not withholding any such documents from production.]**
  - No marketing plans or pricing strategies or guidelines  **[Same response as for marketing and promotional materials.]**
  - No profit and loss statements for the Accused Products.  **[As discussed in the past, my understanding is that Alcatel-Lucent does not track profit and loss at the product level.]**
  - We have no sales information of any kind for the following Accused Products:  **[As previously stated, we are awaiting infringement contentions for these products.  Again, one concern that we have is that Lambda wishes to fold sales of all these products into its alleged value**

2

of the case (for, e.g., settlement purposes) even before it has performed its own infringement analysis.]

- ■ Alcatel-Lucent 1626 Light Manager
- ■ Alcatel-Lucent Metropolis Enhanced Optical Networking (EON)
- ■ Metropolis Wavelength Services Manager (WSM)
- ■ Alcatel-Lucent 1830 Photonic Service Switch (PSS)
- ■ Alcatel-Lucent 1850 Transport Service Switch (TSS)
- ■ Alcatel-Lucent 1870 Transport Tera Switch (TTS)
- o Requests for bids/proposals (RFP) prepared, or received, by ALU relating to the Accused Products **[To the extent these exist, they would be costly and burdensome to search for and produce. Because they are of limited to no relevance, we agree to undertake this effort if Lambda agrees to pay the associated costs. Apparently Lambda anticipates a convoyed sales argument, but such an argument carries a high burden, a burden that Lambda has not provided any indication that it can meet. *See, e.g.*, *American Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008) (finding that, to establish a convoyed sale, the patented and unpatented products much be "considered to be components of a single assembly or parts of a complete machine, or they together constituted a functional unit"). Your request is further overbroad and unclear.]**
  - ■ Including RFPs received from customers and RFPs Alcatel sent to customers
  - ■ Alcatel-Lucent's response to any RFP (i.e., the bids or proposals Alcatel-Lucent provided in response to an RFP)
- o Documents from Lucent Government Systems / Lucent Government Solutions concerning LOS **[See below.]**
- • Cost of goods:
  - o We have no cost of goods breakdown for the accused products. **[We have discussed this multiple times. Alcatel-Lucent does not track comprehensive costs of goods information at the product level. You have cost of goods information produced with the sales information (see the columns labeled "Cogs Amount" which stands for Cost Of Goods Sold Amount). Some company-wide costs information can be located in publicly filed financials, which we have produced. We have located nothing else to produce after a reasonable search.]**
    - ■ no production costs, R&D costs, marketing/sales costs, manufacturing costs, royalty costs, etc., were provide
  - • Emails relating to the '229 Patent **[See my October 22nd letter]**

o   Emails regarding the prosecution of U.S. Patent Nos. 7,710,866 and 7,619,886, which mention the '229 Patent.  **[These are Alcatel-Lucent Canada patent prosecutions.  Alcatel-Lucent Canada is a wholly separate company from the named Alcatel-Lucent defendants as shown in the same organizational chart that you attach and cite.  Our understanding is that these prosecutions cannot impact Lambda's statute of limitations arguments and we have repeatedly asked for an explanation of their relevance.  And, of course, the prosecutions themselves are publicly available.]**

o   Emails regarding Alcatel's claim that it owns the technology covered in the '229 Patent.  **[We have performed a reasonable search and are not withholding any emails on this topic.  Please identify with specificity the types of documents that you expect to find but have not seen, and we will perform a supplemental search.]**

o   Emails from Lucent Government Systems / Lucent Government Solutions concerning LOS  **[See below.]**

•   Documents regarding ALU's efforts to team up with LOS to offer all optical switches to the US Government.  **[Alcatel-Lucent has performed a reasonable search and produced any responsive, non-privileged documents relating to Lambda Optical Systems.  Regarding LGS, see below.]**

o   Emails to/from the following: Lucent Federal Systems, Lucent Government Solutions, Jim Powers, Rick Gilmore, Greg Swanson and Chuck Giasson.

We will need to get a response from you whether Alcatel will produce the requested documents my tomorrow morning at 10:00 am (Pacific).  If we do not hear from you we will commence the process to bring these issues to the attention of Judge Burke this week for resolution.

**3.  Lucent Government Solutions/Lucent Government Systems/LGS Innovations, LLC (collectively referred to as "LGS")**:

We served document requests regarding documents likely within the possession of this subsidiary.  In our discussion yesterday, you stated that we needed to subpoena this entity for the documents requested because it was a separate entity not under the control of the ALU entities named as defendants in this case and thus ALU had "no access" to the documents.  We checked publicly available information and learned that LGS is a subsidiary wholly owned by the ALU entities named as defendants in this case.

I have enclosed for your convenience excerpts from ALU's 2011 Annual Report which clearly shows (in an ORG chart at page 4) that LGS is a subsidiary of Alcatel-Lucent USA, Inc., which in turn is a subsidiary of Alcatel-Lucent Holdings, Inc., both named defendants.  Further, LGS states that it is the "sales channel" or sales agent of ALU regarding sales of ALU products to the U.S. Government.  Accordingly, ALU has "access" to the documents kept by LGS, and demand is made that documents responsive to the requests served on ALU be produced by ALU.  *Ethypharm S.A. France v. Abbot Laboratories*, 271 F.R.D. 82, 93-96 (D. Del 2010) (case enclosed).

Tomorrow you will receive notice(s) of deposition for ALU's 30(b)(6) witness(es).  The notice(s) includes several topics concerning LGS.  Pursuant to the *Ethypharm* case, ALU is also required to provide a witness who can speak to these topics as LGS is a subsidiary of the named defendants.  *Id.*  In light of what appears to be a brewing dispute on this issue, we are preparing a subpoena for documents and 30(b)(6) deposition to LGS as a precaution.  This, however, should not

be construed as conceding our position that ALU has access to documents and witnesses at LGS and thus a subpoena is not required.

In past discussions you mentioned ALU conducted a reasonable search for documents, emails, etc., that mention or concern LOS.  However, your comments during yesterday's call made it apparent that ALU did not conduct any search for documents within its LGS subsidiary.  The disclosure of ALU's failure to conduct a search for responsive documents within its LGS subsidiary this late in discovery is prejudicial to Lambda.

[With respect to LGS (as defined by you), we have considered the *Ethypharm* case that you cite.  *Ethypharm* indicates that this is a very fact specific issue.  Indeed, other cases have looked to a party's legal right and practical ability to obtain documents in the ordinary course of business under the specific circumstances of the case.  *See, e.g., Glenz v. Sharp Elec. Corp.*, 2010 WL 2758729, at *3 (D.N.J. July 12, 2010) and *Playboy Entm't Grp., Inc. v. U.S.A.*, 1997 WL 873550 (D. Del. Dec. 11, 1997).  The burden is on Lambda to make the requisite showing.  *See, e.g., Glenz v. Sharp Elec. Corp.*, 2010 WL 2758729, at *3 (D.N.J. July 12, 2010) ("[T]he moving party bears the burden of proving the producing party has the requisite control to produce the sought-after documents.").

You assume that the relationship between Alcatel-Lucent and its LGS subsidiary exhibits the standard control a corporate parent has over a corporate subsidiary.  It does not.  Please see, for example, http://www.alcatel-lucent.com/us/partners/update/highlights/lgs_innovations.html.  Because Alcatel-Lucent has a non-U.S. based parent company, this website explains that the U.S. government required the formation of LGS as a separate entity with certain separations of control in order to protect the confidential information of the U.S. government.  Accordingly, there are firewalls and hurdles in place in order to respect the U.S. government's requirement that information and control be separated.  This prevents Alcatel-Lucent from having free access to perform discovery within LGS.  In short, Lambda has not addressed these facts and has not met its burden.

So that Alcatel-Lucent can respect the demands of the U.S. Government to the best of its ability, we have asked that you subpoena LGS separately given your recent focus on documents and testimony specific to LGS.]

**4.  Discovery Schedule**:

For many months we have requested the production of documents from ALU.  ALU's refusal or inability to produce responsive documents has hampered Lambda's efforts to prepare for trial.  There are barely 6 weeks left to the close of discovery and we have not yet received many of the documents that are overdue.  Lambda requires the documents to prepare for, and notice, relevant depositions of ALU witnesses, and provide necessary information to its consultants/experts for the expert discovery phase.  Given the upcoming discovery deadline we are forced to notice 30(b)(6) depositions without the benefit of access to documents that were requested early in this case.  Further, we had to take off calendar the depositions of Lambda witnesses due to the recent storm (Sandy) that hit NYC, and today we learned that Dr. Kim's deposition will not go forward this week.  We also have to contend with the upcoming holidays and the (un)availability of witnesses between now and December 17.  Accordingly, we are asking that the parties stipulate to move the discovery deadline to mid-March 2013 to accommodate the discovery that still needs to be completed.  We request a response no later than 10 am tomorrow (pacific time), if we don't hear from you we will also ask to court to move the discovery deadline in conjunction with our motion to compel.

[To date (or at least until today), Lambda had not noticed *any* depositions of Alcatel-Lucent.  Alcatel-Lucent has produced a large volume of documents and has long since identified relevant witnesses in response to interrogatories and in initial disclosures.  Your assertion that Lambda has been unable to notice a single deposition to date because of remaining discovery disputes is, at best, unconvincing.  Additionally, all indications are the Lambda did not even sign up a non-infringement expert until July of this year even though Lambda filed this litigation in June 2010.]

We look forward to hearing from ALU tomorrow.

Regards,

Victor M. Felix
*Partner*



Procopio, Cory, Hargreaves & Savitch LLP
525 B Street, Suite 2200
San Diego, CA 92101
*direct dial:* (619) 515-3229
*direct fax:* (619) 744-5409
victor.felix@procopio.com
www.procopio.com

Please consider the environment before printing this e-mail. 

mailgw01.procopio.com made the following annotations
-------------------------------------------------------------------
Tue Nov 13 2012 22:06:46

This is an email from Procopio, Cory, Hargreaves & Savitch LLP, Attorneys at Law. This email and any attachments hereto may contain information that is confidential and/or protected by the attorney-client privilege and attorney work product doctrine. This email is not intended for transmission to, or receipt by, any unauthorized persons. Inadvertent disclosure of the contents of this email or its attachments to unintended recipients is not intended to and does not constitute a waiver of attorney-client privilege or attorney work product protections. If you have received this email in error, immediately notify the sender of the erroneous receipt and destroy this email, any attachments, and all copies of same, either electronic or printed. Any disclosure, copying, distribution, or use of the contents or information received in error is strictly prohibited.

Federal tax regulations require us to notify you that any tax advice in this electronic message was not intended or written to be used, and cannot be used, for the purpose of avoiding penalties.

-------------------------------------------------------------------

**Todd M. Simpson**
**ROPES & GRAY LLP**
T +1 212 596 9759 | F +1 646 728 2674
1211 Avenue of the Americas
New York, NY 10036-8704
todd.simpson@ropesgray.com
www.ropesgray.com

# Exhibit H

REDACTED

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on April 19, 2012, this document was served on the

persons listed below in the manner indicated:

**BY E-MAIL:**

Andrew Colin Mayo
Steven J. Balick
Lauren E. Maguire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
amayo@ashbygeddes.com
sbalick@ashbygeddes.com
lmaguire@ashbygeddes.com
*Attorney for Lambda Optical Systems*
*Corporation & Lambda Optical Solutions LLC*

Jack B. Blumenfeld
MORRIS NICHOLS ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
*Attorney for Cisco Systems Inc.*

Anthony Dain
Victor Felix
Robin Phillips
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
530 B Street Suite 2100
San Diego, CA 92101
ajd@procopio.com
vmf@procopio.com
rlp@procopio.com
*Attorneys for Lambda Optical Solutions LLC*

Sean T. O'Kelly
O'KELLY, ERNST, BIELLI & WALLEN, LLC
1000 N. West Street, Suite 1200
Wilmington, DE 19801
(302) 295-4905
sokelly@oebwlegal.com
*Attorney for Anastasios Tzathas*

Edward R. Reines
Matthew D. Powers
Sonal N. Mehta
WEIL GOTSHAL & MANGES
201 Redwood Shores Parkway
Redwood Shores, CA 94065
edward.reines@weil.com
matthew.powers@weil.com
sonal.mehta@weil.com
*Attorneys for Cisco Systems Inc.*

David E. Wang
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 289-7181
dwang@orrick.com
*Attorney for Fujitsu Network Communications*
*Inc.*

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON, LLP
1313 N. Market St., Hercules Plaza, 6th Flr.
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
*Attorneys for Fujitsu Network Communications Inc.*

SHAW KELLER LLP

*/s/ John W. Shaw*
John W. Shaw (No. 3362)
300 Delaware Avenue, Suite 1120
Wilmington, DE  19801
(302) 298-0700
jshaw@shawkeller.com

*Attorneys for Defendants Alcatel-Lucent USA Inc. and Alcatel-Lucent Holdings Inc.*

Dated: April 19, 2012