IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LAMBDA OPTICAL SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALCATEL-LUCENT USA INC. and | ) | |
| ALCATEL-LUCENT HOLDINGS INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | Civ. Action No. 10-487-RGA-CJB |
| ALCATEL-LUCENT USA INC. and | ) | |
| ALCATEL-LUCENT HOLDINGS INC., | ) | |
| | ) | |
| Counter-Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAMBDA OPTICAL SOLUTIONS, LLC, | ) | |
| LAMBDA OPTICAL SYSTEMS CORP., and | ) | |
| ANASTASIOS TZATHAS, | ) | |
| | ) | |
| Counter-Defendants. | ) | |

**REPORT AND RECOMMENDATION**

In this patent case filed by Plaintiff Lambda Optical Solutions, LLC ("Lambda" or "Plaintiff") against Defendants Alcatel-Lucent USA Inc. and Alcatel-Lucent Holdings Inc. (collectively, "Alcatel" or "Defendants"), Plaintiff alleges infringement of U.S. Patent No. 6,973,229 ("the '229 patent"). Presently before the Court are Alcatel's motion to strike portions of Lambda's infringement contentions and Lambda's motion seeking certain discovery sanctions,[1] both of which were raised via a Joint Motion for Teleconference to Resolve

---

[1] The Court will consider Alcatel's request, which seeks to prevent Lambda from asserting additional patent claims in this litigation, as a case-dispositive issue, the resolution of

1

Discovery Dispute. (D.I. 301) For the following reasons, the Court will: (1) recommend that Alcatel's request to strike portions of Lambda's infringement contentions be DENIED and (2) order that Lambda's request for certain discovery sanctions be DENIED.

## I. BACKGROUND

Plaintiff's Complaint, which was filed on June 4, 2010, originally alleged infringement against twenty defendants (D.I. 1); other than Alcatel, all of the other originally named defendants have been dismissed by stipulation. On January 24, 2011, Alcatel timely answered Plaintiff's Complaint, and asserted counterclaims against Lambda, Lambda Optical Systems Corp. (collectively, "Lambda"), and Anastasios Tzathas, one of the named inventors of the '229 patent. (D.I. 74) On March 28, 2012, this case was referred to me by Judge Richard G. Andrews to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions.

On January 22, 2013, the parties filed a Joint Motion for Teleconference to Resolve Discovery Dispute, (D.I. 301), and in subsequent letter briefs, the parties set out their positions regarding four disputed issues, (D.I. 302; D.I. 303). On January 28, 2013, the Court held a

---

which requires the Court to issue a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and D. Del. LR 72.1(a)(3). *See Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91-93 (S.D.N.Y. 2002) (deciding that a decision to preclude the assertion of an additional patent claim was case-dispositive). However, the Court will consider Lambda's request, which seeks to prevent Alcatel from asserting a specific theory of non-infringement, as a non-dispositive issue, one resolved pursuant to 28 U.S.C. § 636(b)(1)(A) and D. Del. LR 72.1(a)(2). *See SPX Corp. v. Bartec USA, LLC*, 574 F. Supp. 2d 748, 754-56 (E.D. Mich. 2008) (reviewing a Magistrate Judge's decision to exclude untimely submitted invalidity contentions pursuant to Rule 37(c)(1) as a non-dispositive matter); *Am. Stock Exch.*, 215 F.R.D. at 91-93 (suggesting that an order preventing a party from asserting an alternative theory of infringement would not be a dispositive ruling). Thus, because one of the two issues before it here is case dispositive, the Court has titled the instant document as a "Report and Recommendation."

teleconference with the parties to attempt to resolve these issues. (D.I. 301) On the teleconference, the Court resolved two of the issues. (D.I. 308 at 1)

However, with respect to the other two issues—the two pending here—the Court ordered the parties to submit supplemental briefing. (*Id.* at 1-2) Noting that both issues dealt with the "alleged failure of the non-moving party to have timely supplemented that party's responses to certain interrogatories regarding the party's infringement or non-infringement contentions," the Court ordered the parties to submit simultaneous letter briefs addressing:

> [W]hether the contention interrogatory-at-issue was timely supplemented, and if not, whether the failure to do so was substantially justified or is harmless . . . in accordance with the tests set forth in *Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*, 661 F. Supp. 2d 473, 476-77 (D. Del. 2009) and *WebXchange Inc. v. FedEx Corp.*, C.A. No. 08-133-JJF, 2010 WL 299240, at *2 (D. Del. Jan. 20, 2010), unless the parties deem these tests inapposite.

(*Id.* at 2) In their subsequent briefing, completed on February 11, 2013, the parties agreed that the tests set forth in the aforementioned cases were applicable to the issues at hand, and set out their respective positions on the remaining issues in accordance thereof. (D.I. 314; D.I. 315)

## II. STANDARD OF REVIEW

The supplementation of discovery responses is governed by Federal Rule of Civil Procedure 26(e), which states that "[a] party who has . . . responded to an interrogatory . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Courts consider four factors in determining whether a party has breached its duty to timely amend a discovery response under this rule:

3

> (1) whether there was a prior response, (2) whether the response became materially incorrect or incomplete, (3) whether the party knew that the response was incomplete, and (4) whether the corrective information was otherwise made known to the other party through the discovery process or in writing.

*Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*, 661 F. Supp. 2d 473, 476-77 (D. Del. 2009) (citing *Tritek Tech., Inc. v. United States*, 63 Fed. Cl. 740, 746-47 (Fed. Cl. 2005)). Our Court has explained that the focus under these factors has been whether a party provided adequate notice of its legal contentions and their corresponding evidentiary bases. *Id.* at 477 (citation omitted).

An untimely supplementation under Rule 26(e) may lead to exclusion of the materials in question under Federal Rule of Civil Procedure 37(c)(1). Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Courts consider the following factors when determining whether a failure to supplement was substantially justified or harmless:

> (1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence[.][2]

---

[2] These factors, which are sometimes articulated in slightly different ways, are often referred to as the "*Pennypack* factors." *See Lab. Skin Care*, 661 F. Supp. 2d at 477; *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)). Although certain articulations omit the "explanation" factor, in such cases, the non-movant's explanation for failure to supplement is still taken into account in relation to the "bad faith or willfulness" factor. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 299 (3d Cir. 2012) ("As to the [bad faith or willfulness] factor, there is no evidence of any bad faith on the part of Plaintiffs. However, under this . . . factor, we may also consider the Plaintiffs' justifications for failing to include alternative damages calculations in the event calculations based on the SBP were found to be insufficient.") (citing *Pennypack*, 559 F.2d at 905) (additional citation omitted); *see also*

*Lab. Skin Care*, 661 F. Supp. 2d at 477 (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)) (additional citation omitted). However, courts undertaking this review must keep in mind that the exclusion of "critical" evidence is an "extreme" sanction, "not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *Meyers*, 559 F.2d at 905 (internal quotation marks and citation omitted); *WebXchange Inc. v. FedEx Corp.*, C.A. No. 08-133-JJF, 2010 WL 299240, at *2 (D. Del. Jan. 20, 2010).[3]

### III. DISCUSSION

#### A. Alcatel's Request to Strike Portions of Lambda's Infringement Contentions

The first issue deals with whether Lambda should be permitted to assert eight additional claims of the '229 patent, which it disclosed for the first time on October 24, 2012, in its supplemental infringement contentions. (D.I. 314 at 5; D.I. 315 at 2-3)

##### 1. Background

On January 4, 2012, Alcatel served its First Set of Interrogatories on Lambda; Interrogatory Number 1 requested, *inter alia*, that Lambda provide its infringement contentions, including an identification of all claims of the '229 patent that it intended to assert. (D.I. 315 at 2; D.I. 315, ex. A at 6) On February 13, 2012, in response to these interrogatories, Lambda

---

*Canterna v. United States*, 319 F. App'x 93, 98-99 (3d Cir. 2008) (finding no evidence of bad faith or willfulness where "it [was] understandable that the destruction of the IRS's Manhattan office on September 11, 2001, caused substantial disruption in that agency's record-keeping systems and may have prevented strict compliance with discovery schedules").

[3] As the discovery-related issues covered in this motion are not unique to patent law, the law of the regional Circuit (here, the Third Circuit) applies. *Bridgestone Sports Co. Ltd. v. Acushnet Co.*, No. Civ. A. 05-132 JJF, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007).

served its Objections and Responses to Alcatel's First Set of Interrogatories ("First Infringement Contentions"), asserting ten claims of the '229 patent (Claims 1, 2, 4, 5, 6, 7, 11, 12, 18, and 25) against five Alcatel products. (D.I. 315 at 2; D.I. 302, ex. B; D.I. 314, ex. 8) In this response, Lambda also "reserve[d] the right to assert additional claims, theories and/or products upon obtaining further information through discovery." (D.I. 302, ex. B. at 6) In an e-mail dated February 23, 2012, Alcatel's counsel informed Lambda's counsel that Defendants "would strenuously object to any attempt by Lambda to assert additional claims later [because they are] relying on Lambda's identification of asserted claims in the upcoming claim construction disclosures, discovery, and preparation of their case and should not be prejudiced by any subsequent identification of asserted claims." (*Id.*, ex. C at 2)

On March 29, 2012, Lambda served its First Set of Requests for Production of Documents and Things on Alcatel, requesting technical documents regarding Alcatel's products that Lambda had accused of infringement. (D.I. 314, ex. 10; D.I. 315 at 3) Alcatel produced this discovery on May 31, 2012.[4] (D.I. 314 at 6; D.I. 314, ex. 11; D.I. 315 at 3) According to Lambda, this production consisted of "221,476 pages of highly technical documents." (D.I. 314 at 6) On October 24, 2012, after Alcatel's repeated requests to Lambda to update its infringement contentions, Lambda served its Second Supplemental Responses and Objections to Alcatel's First Set of Interrogatories ("Second Infringement Contentions"). (D.I. 302, ex. E; D.I. 314 at 6) In the Second Infringement Contentions, which spanned 808 pages, Lambda asserted, *inter alia*, eight additional claims of the '229 patent (Claims 8, 9, 13, 14, 15, 16, 23 and 24)

---

[4] The Court held a *Markman* hearing on May 30, 2012 regarding certain claim terms contained in the then-asserted claims. The Court issued a Report and Recommendation on claim construction on August 3, 2012. (D.I. 234)

against three additional Alcatel products. (D.I. 315 at 3; D.I. 302, Ex. E) However, Alcatel states that it did not discover that Lambda had asserted these additional claims until December 17, 2012, when Alcatel was reviewing a much shorter set of contentions the Court had ordered Lambda to produce after a November 30, 2012 teleconference. (D.I. 315 at 3)

### 2. Lambda's Supplementation of Its Infringement Contentions Was Not Untimely

Alcatel argues that Lambda's attempt to assert additional claims in its Second Infringement Contentions was untimely and that Lambda should therefore be precluded from asserting these claims under Rule 37(c)(1). (*Id.* at 1) As for the issue of timeliness, Alcatel argues that although Lambda knew its First Infringement Contentions were incomplete from some point "soon after receiving technical documentation in May 2012," it made no efforts to inform Alcatel that it wanted to assert more claims until it served its Second Infringement Contentions. (*Id.* at 3-4) Alcatel contends that even the Second Infringement Contentions, which added the new claims, failed to "provide[] adequate notice of [Lambda's] legal contentions" because the new claims were "buried" in 808 pages of contentions and Lambda "made no effort to bring the issue to Alcatel['s] attention." (*Id.* at 4)

For its part, Lambda argues that its supplementation was timely because it provided its Second Infringement Contentions on "the soonest possible date under the circumstances," considering the amount of time it took to review and analyze Alcatel's voluminous production of technical documentation. (D.I. 314 at 6) It notes that this supplementation was provided more than two months before the close of fact discovery. (*Id.* at 7) Lambda also argues that the Second Infringement Contentions sufficiently put Alcatel "on notice of the [new] claims"

because a "review of the claim[] charts produced by Lambda would have alerted [Alcatel] that over a fourth of the claim charts produced were dedicated to the newly identified claims"—in that 231 of the 808 pages of the new claim charts produced on October 24, 2012 were exclusively dedicated to the newly asserted claims. (*Id.* at 6-7)

Utilizing the test set out in *Lab. Skin Care*, first, it is clear that the "prior" relevant discovery response from Lambda came on February 13, 2012, the date on which Lambda served its First Infringement Contentions, asserting ten claims of the '229 patent.

As to the second and third factors—whether the response became materially incorrect or incomplete and whether the party knew that the response was incomplete—there is no real dispute that at some point thereafter, Lambda's response became materially incomplete, as Lambda later determined that it had a basis to accuse certain of Alcatel's products of infringing additional claims of the patent-in-suit. There also is no real dispute that this occurred sometime after Lambda received Alcatel's May 31, 2012 production, as Lambda explains that although its "initial response to [Alcatel's] Interrogatory N[umber] 1 was based on publicly available information[,] . . . [it was only] [f]ollowing a detailed review and analysis of [Alcatel's] production of nearly a quarter million pages of documents [that] Lambda was able to set forth its infringement contentions in great detail, including [the] eight newly asserted claims." (D.I. 314 at 7) As for *exactly when* this occurred, for understandable reasons, neither side attempts to pinpoint a particular date, though Alcatel argues that this "should have [occurred] soon after receiving [Alcatel's] technical documentation in May 2012." (D.I. 315 at 3)

Here, given the significant quantity and technical nature of the documentation provided by Alcatel in May 2012, the Court finds it reasonable to conclude that Lambda would not have

been aware of the materially incomplete nature of its responses to Interrogatory Number 1 until some period of time elapsed after the May 31, 2012 production. From there, while it appears to have then taken some number of weeks (or months) for Lambda to produce the Second Infringement Contentions, the Court does not find Lambda's supplementation efforts to have been unreasonably delayed, in light of: (1) the significant effort required for Lambda and its expert to review the documents-at-issue and to issue a lengthy supplemental response to the interrogatory and (2) the fact that Lambda's expert was at the time also dealing with a significant family medical matter. (D.I. 314 at 6 & n.6) The Court is also impacted in its decision by the fact that the Second Infringement Contentions were served on October 24, 2012, two months before the close of the then-applicable discovery deadline, which expired on December 31, 2012. *See BIAX Corp. v. NVIDIA Corp.*, Civil Action No. 09-cv-01257-PAB-MEH, 2011 WL 441470, at *1, 5 (D. Colo. Feb. 8, 2011) (finding the assertion of new claims against new products was appropriate where there were no local rules or court orders requiring the submission of contentions by a particular date and the contentions-at-issue were served before the close of fact discovery); *Boehringer Ingelheim Int'l GMBH v. Barr Labs., Inc.*, Civil Action No. 05-700-JJF, 2008 WL 2756127, at *2 (D. Del. July 15, 2008) (finding supplementation timely where, *inter alia*, documents sufficient to put the plaintiff on notice of defendant's contentions were filed before the close of discovery); *cf. Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93-94 (S.D.N.Y. 2002) (finding new claims untimely asserted pursuant to Rule 26 where "[a]t no time during the discovery period" did defendant supplement its responses to identify new claims, and

did not do so until one month after discovery closed).[5]

As to the fourth factor—whether the "corrective information was otherwise made known to the other party through the discovery process or in writing" (i.e., here, whether Lambda's Second Infringement Contentions were, in and of themselves, sufficient to put Alcatel on notice of Lambda's new contentions), the Court finds that the Second Infringement Contentions sufficed. Alcatel argues that Lambda was required to "bring the [the assertion of new claims] to Alcatel['s] attention" in order to "'provide[] adequate notice of its legal contentions.'" (D.I. 314 at 4) However, by serving Alcatel with its Second Infringement Contentions, Lambda did provide notice that it intended to assert these new claims, as that submission contained claim charts that specifically identified the newly asserted claims. (D.I. 302, ex. E; D.I. 314 at 7; D.I. 315 at 3-4) Although the submission was voluminous, the Court cannot conclude that these new claims were "buried" in the document, at least here when they made up such a substantial part of it. While it may have been preferable for Lambda to more expressly indicate (i.e., in a cover letter or other communication) that new claims were being asserted, under these circumstances, the Court cannot say that this was required in order to meet Rule 26(e)'s mandates. *Cf. Boehringer Ingelheim Int'l GMBH*, 2008 WL 2756127, at *2 (finding that defendants had put the plaintiff on notice of their contentions regarding a double-patenting defense, where the defendant's notice letter referenced defendant's previously-submitted expert reports, and where those expert reports were themselves sufficient to put the plaintiff on notice of the contentions).

Therefore, the Court recommends that Lambda's assertion of additional claims from the

---

[5] Plaintiff notes that Defendants supplemented certain of their contentions (their invalidity contentions) as late as the last day of fact discovery. (D.I. 314 at 7 n.7)

'229 patent be found to have fulfilled its obligations under Rule 26(e), and that Alcatel's motion be denied as to this issue.

### B. Lambda's Request for Certain Discovery Sanctions

Next, Lambda requests the Court impose a discovery sanction on Alcatel and find that 100% of the reported sales for Alcatel's 1695 Wavelength Services Manager ("1695 WSM") product be deemed to be infringing sales. It argues this sanction is warranted because Alcatel untimely disclosed a "new non-infringement contention": that the vast majority of the sales of the 1695 WSM were for configurations that do not infringe. (D.I. 314 at 1-5)

#### 1. Background

On February 13, 2012, Lambda claimed, in its First Infringement Contentions, that Alcatel's 1695 WSM product infringed the '229 patent. (D.I. 302, ex. B at 6) However, Lambda did not provide an infringement chart for the 1695 WSM, instead stating that a "representative" claim chart of another product was sufficient. (*Id.*; D.I. 315 at 6)

On March 1, 2012, Lambda served its First Set of Interrogatories on Alcatel. (D.I. 314 at 1-2; D.I. 314, ex. 1) Interrogatory Number 4 asked, *inter alia*, that Alcatel disclose all of its non-infringement contentions (as well as its invalidity contentions) regarding each of the accused products, including the 1695 WSM. (D.I. 314 at 1-2; D.I. 314, ex. 1 at 8) On April 19, 2012, in its Responses to Lambda's First Set of Interrogatories ("First Non-Infringement Contentions"), Alcatel generally contended, *inter alia*, that the '229 patent was invalid, but (due to the asserted insufficiency of Lambda's initial infringement contentions) Alcatel did not provide any specific non-infringement contentions regarding the 1695 WSM product in particular (or as to other accused products). (D.I. 314 at 2; D.I. 314, ex. 2 at 11)

On May 31, 2012, Alcatel produced technical documentation for the 1695 WSM product. (D.I. 315 at 6; D.I. 315, ex. F) This documentation disclosed that the 1695 WSM product is sold in two primary configurations—an OADM, non-switching, patch panel and a ROADM blocker configuration. (D.I. 315 at 6; D.I. 315, ex. F at AL 0181050-51 (noting that the chapter's purpose is to "identif[y] [product] node *configurations*" and noting both OADM and ROADM Node configurations) (emphasis added))

On August 17, 2012, Alcatel produced financial information (the "sales data") for the 1695 WSM product (including OADM and ROADM configurations). (D.I. 315 at 7-9) Alcatel later supplemented this financial information on September 17, October 23, and December 31, 2012. (*Id.*) This sales data, on its face, did not clearly indicate which sales are related to the OADM configurations, as compared to the ROADM configurations. (*Id.*)

On October 24, 2012, both sides exchanged supplemented infringement and non-infringement contentions. In its Supplemental Response to Lambda's First Set of Interrogatories ("Second Non-infringement Contentions"), Alcatel included a number of non-infringement contentions as to all accused products, and additionally contended that the 1695 WSM product, in particular, did not infringe because it was covered by a license. (D.I. 314 at 2; D.I. 315 at 7; D.I. 315, ex. E at 22) As to certain other accused products, Alcatel asserted that certain of their configurations (such as OADMs) cannot "selectively couple" or "switch" as was required by the asserted claims (i.e., that they are "patch panels"). (D.I. 315 at 7; D.I. 315, ex. E at 24) Lambda, in its Second Infringement Contentions and in reliance on the technical documentation previously produced by Alcatel, provided, for the first time, infringement charts against the 1695 WSM product. (D.I. 315 at 7) In these charts, Lambda accused only the ROADM blocker (non-

12

patch panel) configuration of the 1695 WSM product. (D.I. 315 at 7; *see, e.g.*, D.I. 302, ex. E at 154-59 (accusing eROADM and uROADM configurations of the 1695 WSM))

Around December 14, 2012, Alcatel's counsel, in the course of preparing Alcatel's technical witness on the 1695 WSM product for deposition (which was first noticed on November 14, 2012), learned that the "vast majority of sales of the 1695 WSM were for hardwired OADM patch panel[] [configurations]" that cannot "switch." (D.I. 315 at 8) Alcatel began further study of the sales data for the 1695 WSM product to attempt to confirm this. (*Id.*)

On December 31, 2012, at the close of discovery, Alcatel served its Second Supplemental Response to Lambda's First Set of Interrogatories ("Third Non-infringement Contentions"). (D.I. 314 at 2; D.I. 314, ex. 4) This response did not disclose the information learned by Alcatel's counsel around December 14, 2012. (*Id.*) On January 11, 2013, during a phone call, Alcatel's counsel informed Lambda's counsel that all or the vast majority of the 1695 WSM sales reflected in the sales data were for hardwired patch panels, which Lambda had not accused of infringement. (D.I. 315 at 8)

> 2. **Even Assuming Lambda Untimely Supplemented Its Non-Infringement Contentions, Such Error Was Substantially Justified and Is Harmless**

It is debatable whether Alcatel's disclosure constitutes a "non-infringement contention" or, even if it did, whether it was timely disclosed; however, because the Court concludes that any potential untimeliness by Alcatel is otherwise harmless and substantially justified, the Court need not resolve the former issues.

First, with respect to the importance of the information at issue, the Court acknowledges its importance to the resolution of this litigation on the merits. While total sales for all

configurations of the 1695 WSM product in the relevant time period were over $72.3 million, Alcatel claims that the vast majority of those sales are for configurations that Lambda has not accused of infringement in this litigation. (D.I. 314 at 3) Thus, this information has the possibility to reduce Alcatel's potential liability by tens of millions of dollars.[6] (*Id.*); *cf. ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 299-300 (3d Cir. 2012) (finding that with respect to importance of evidence, this factor favored the party opposing exclusion where exclusion "would clearly influence the outcome of the case").

As for the extent of any prejudice or surprise to Lambda, Lambda argues that it has been prejudiced because it has (1) been denied the ability to obtain discovery and conduct its own investigation into the legitimacy of Alcatel's contentions and (2) invested substantial time and expense preparing its case and conducting discovery in reliance on Alcatel's earlier contentions. (D.I. 314 at 4) The Court does not doubt that Lambda has invested substantial time and expense in preparing its case. However, any prejudice flowing from Alcatel's late disclosure is mitigated, at least to some extent, by the fact that Alcatel had produced documentation to Lambda that Lambda could have used to discern that less than 100% of the sales of the 1695 WSM were sold in allegedly infringing configurations. More specifically, Alcatel's May 31, 2012 production of technical documentation indicated that the 1695 WSM is sold in two primary configurations—an OADM, non-switching, patch panel and a ROADM blocker configuration. (D.I. 315 at 6; D.I. 315, ex. F at AL 0181050-51) And it appears that, by at least October 23, 2012, Alcatel had

---

[6] These facts also emphasize the magnitude of the sanction that Lambda seeks here—that if the 1695 WSM product is found to infringe, over $70 million (as opposed to some smaller fraction of that figure) should be found to be "the total amount for which those infringing products were sold." (D.I. 314, ex. 5 at 33:12-14)

14

produced financial information that Lambda could have used to determine the extent of sales attributable to all configurations of the 1695 WSM. (D.I. 315 at 7-8; D.I. 315, ex. G) In turn, Lambda decided to *only* accuse the ROADM blocker (non-patch panel) configuration on October 24, 2012. (D.I. 315 at 7; D.I. 302, ex. E) Having decided to only accuse one configuration of the 1695 WSM of infringement and having the sales data necessary to determine the scope of damages—at least more than two months before the close of fact discovery—it seems any prejudice Lambda faced in this regard is, at least partially, of its own making. Put another way, if Lambda was now accusing one configuration of the 1695 WSM of infringing, and it had previously been provided with data suggesting that 1695 WSM sales totaled over $70 million for the relevant time period, it is not unreasonable to expect that Lambda would utilize the remaining discovery period to seek further information about how exactly those large reported sales relate to its infringement claims. *Cf. Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, 817 F. Supp. 2d 394, 398 (D. Del. 2011) (finding exclusion inappropriate where the plaintiff could have avoided any alleged prejudice by making its inventors available for deposition sooner so that defendants could have sooner discovered the basis for their newly introduced best mode defense). Lambda instead appears to have assumed that the entirety of the sales data provided by Alcatel related only to the ROADM configuration that it was now accusing, and did not depose the Alcatel witness who would have testified otherwise during the discovery period.

As to the likelihood of disruption of a trial, Lambda argues that permitting Alcatel's new non-infringement contention to stand would disrupt the timely disposition of this action. It asserts that in such a scenario, Lambda would be required to re-engage in further discovery to explore Alcatel's allegations, which would delay the service of expert reports, case-dispositive

15

motions and trial. (D.I. 314 at 4) However, no trial is currently scheduled in this case, and so, at a minimum, any additional discovery necessary to explore this issue will not require cancellation of trial. Moreover, while it is true that the fact discovery period has closed; opening expert reports are not due until June 3, 2013 and case dispositive motions are not due until September 30, 2013. (D.I. 323). If the case schedule must be altered in light of the Court's decision, there is a reasonable chance of doing so in a manner that will not unduly delay the proceedings.

In that same regard, to the extent that Lambda has suffered prejudice that was not of its own making, the Court finds that the case schedule also permits Lambda the opportunity to cure that prejudice. The Court understands that some amount of additional discovery may be reasonable and necessary to allow Lambda to further explore this issue and cure any possible prejudice. Thus, the Court will grant Lambda the ability to take such discovery. As noted above, the posture of this case can allow for that. *Cf. Lab. Skin Care*, 661 F. Supp. 2d at 478 (allowing additional third party discovery to cure any prejudice from allowing defendant to rely on an untimely disclosed piece of prior art in its motion for summary judgment); *Freeman v. Minnesota Mining & Mfg. Co.*, 675 F. Supp. 877, 889 n.8 (D. Del. 1987) (finding that even if a party had violated Rule 26(e) "the equities would point to reopening discovery" where the "issue ar[ose] on a summary judgment motion and [the defendant] w[ould] have time before trial to address [the plaintiff's] allegations").

The Court next finds that even if Alcatel did fail to disclose a "new non-infringement" contention, Alcatel's explanation for its actions is of a nature that does not warrant the extreme sanction Lambda is seeking. Lambda argues that Alcatel's counsel's discovery of the sales information in mid-December is not a valid explanation for its late disclosure of that information

because Alcatel, pursuant to Fed. R. Civ. P. 33(a), was required to investigate all facts within its knowledge, custody, or control upon receipt of Lambda's interrogatories. (D.I. 314 at 2-3, 4-5) It is a fair point that Alcatel's counsel might have been reasonably expected to learn earlier than it did that the vast majority of the 1695 WSM sales data related to OADM patch panel configurations that cannot "switch." But it is worth noting that there is no suggestion here that Alcatel's counsel's explanation—that it only learned this in mid-December 2012—is anything but genuine.

Moreover, Lambda's argument tends to discount the fact that Lambda was not entitled to detailed non-infringement contentions from Alcatel until it had set forth infringement contentions in similar detail. According to the Scheduling Order in this case, "contention interrogatories . . . shall first be addressed by the party with the burden of proof. The adequacy of all interrogatory answers shall be judged by the level of detail each party provides; i.e., the more detail a party provides, the more detail a party shall receive." (D.I. 142 at ¶ 4(d)(iii)) As mentioned above, Lambda did not provide claim charts setting out infringement contentions regarding the 1695 WSM product until October 24, 2012. (D.I. 315 at 7) Thus, it was not until this point that Lambda might have been entitled to non-infringement contentions as to that product that were similar in detail.

Additionally, the timing of Alcatel's disclosure is made more understandable because the information not timely disclosed can plausibly be argued to be less like a non-infringement contention (covered by the interrogatory at issue) and more like information regarding the *extent* of potential infringement (as infringement was being defined by Lambda). When Lambda did provide infringement contentions regarding the 1695 WSM product in October, it only accused

17

the ROADM blocker (non-patch panel) configuration of infringement. (*Id.*; D.I. 302, ex. E) Thus, the Court finds Alcatel's explanation at least understandable—that its disclosure to Lambda that the vast majority of sales of the 1695 WSM were for configurations that were not accused was intended "as a means to narrow discovery [and] not a non-infringement contention." (D.I. 315 at 9)

As for the willfulness factor, Lambda argues that Alcatel had a duty to "make reasonable inquiries of its own personnel to learn the facts and respond to Lambda's interrogatories back in March of 2012," but "willingly failed to do so until recently." (D.I. 314 at 5) For the reasons discussed above, the Court finds that Alcatel has put forward a plausible explanation for any delay in providing the information at issue, and there is no basis to find that its conduct amounted to a wilful disregard of the Scheduling Order. *Cf. Gant v. Klenzade, Inc.*, 155 F.R.D. 102, 103-104 (E.D. Pa. 1994) (finding willful disregard of the scheduling order where the information withheld was clearly responsive to the interrogatory at issue and no credible reason for the late disclosure was offered).

Therefore, all or nearly all of the *Pennypack* factors militate in favor of a conclusion that, even if Alcatel did fail to timely disclose information responsive to the interrogatory at issue, such failure was harmless and was substantially justified under the meaning of the law. For these reasons, the Court orders that Lambda's motion be denied.

## IV. CONCLUSION

For the reasons set forth above, the Court: (1) recommends that Alcatel's request to strike portions of Lambda's infringement contentions be DENIED and (2) orders Lambda's request for certain discovery sanctions is DENIED.

18

To the extent that the Court's decision here will necessitate an alteration of the case schedule, the Court ORDERS counsel to timely meet and confer on that issue, and to submit any proposed amended Scheduling Order to the Court by no later than **April 24, 2012**. Such a proposal, if submitted, should include proposed dates regarding a pre-trial conference and trial.

Because this Report and Recommendation may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Report and Recommendation. Any such redacted version shall be submitted no later than **April 24, 2012** for review by the Court. The Court will subsequently issue a publicly-available version of its Report and Recommendation.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Non-Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, http://www.ded.uscourts.gov.

Dated: April 17, 2013

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE