IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LAMBDA OPTICAL SOLUTIONS, LLC,     ) | |
|     ) | |
| Plaintiff,     ) | |
|     ) | |
| v.     ) | C.A. No. 10-487-RGA-CJB |
|     ) | |
| ALCATEL-LUCENT SA, et al.,     ) | |
|     ) | |
| Defendants.     ) | |
| ALCATEL-LUCENT USA, INC., and     ) | |
| ALCATEL-LUCENT HOLDINGS, INC.,     ) | |
|     ) | |
| Counter-Claimants,     ) | |
|     ) | |
| v.     ) | |
|     ) | |
| LAMBDA OPTICAL SOLUTIONS LLC,     ) | |
| LAMBDA OPTICAL SYSTEMS CORP., and     ) | |
| ANASTASIOS TZATHAS,     ) | |
|     ) | |
| Counter-Defendants.     ) | |

## RESPONSE AND MOTIONS REGARDING THE REDACTED[1] VERSION OF EXPERT

## REPORT AND DISCLOSURES OF MELISSA A. BENNIS

### BY ANASTASIOS TZATHAS

Pursuant to Fed. R. Civ. P. Rules 26(a)(2)(C), "I" (Anastasios Tzathas) Counter – Defendant,

provide the following response as per:

(i)    the subject matter on which the witness is expected to present evidence under
Federal Rule of Evidence 702, 703, or 705; and

1

(ii)    a summary of the facts and opinions to which the witness is expected to testify.

and pursuant to the Local Rules of Civil Practice and Procedure: 7.1.1and 7.1.2, "I" also move

regarding  the statements and opinions of Miss Melissa A. Bennis' "*Redacted version[1] of*

*EXPERT REPORT AND DISCLOSURES*".

([1]The original document: "*EXPERT REPORT AND DISCLOSURES OF MELISSA A. BENNIS*"

which was submitted on September 20, 2013 was subsequently screened by Mr. Todd M.

Simpson; attorney for Alcatel-Lucent and redacted by Mr. Victor M. Felix; partner attorney for

Lambda Optical Solutions LLC, before it was made available to "me" via e-mail on October 7,

2013 and which redacted document "I" used to produce "my" response and motions hereto).

## **TABLE OF CONTENTS**

**1.** Summary of Background and Facts……. …………………………………..….page 4

**2.** Response and Motions …………..………………….. ……………..……………. 6

**3.** Conclusion…..………………………………………………………………............. 11

**4.** Certificate of Service ………………………………………………………………13

## **EXHIBITS**

Exhibit-1: Definitions.

Exhibit-2: Curriculum Vitae.

Exhibit-3: AT&T-Bell Laboratories President's award, in 1991.

Exhibit-4: Lucent Technologies – Bell Laboratories President's Gold award, in 1999.

Exhibit-5: Lucent Technologies –Bell Laboratories Distinguished Member of Technical Staff
award and promotion, in 1999.

## 1. Summary of Background and Facts

"My" education includes  a Master of Science in Electrical Engineering (MSEE) from the Polytechnic Institute of New York, Brooklyn, N.Y (also known as: Polytechnic Institute of Brooklyn, Polytechnic University and now known as Polytechnic Institute of New York University after its merger with the New York University), a Bachelor of Science in Electrical Engineering (BSEE) from the New York Institute of Technology, New York, N.Y and a Diploma in Electronics Engineering (with honors) from the College of Electronics, Athens, Greece ("my" curriculum vitae is attached as Exhibit-2) In 1981, "I" started my career as a Member of Technical Staff ("MTS") with Bell Laboratories ("Bell Labs") the research and development ("R&D") arm of the then known parent company Bell System. Since 1981, the parent company went through major transformations, divestitures and name changes. By mid-1990 as a result of yet another break-up, a new company emerged called Lucent Technologies which kept the original "Bell Labs" as its own R&D center while the second part; known as AT&T concentrated in the telecommunications services industry segment as a separate company and the remaining third part which was spun-off was also previously known as NCR. In 1997, "I" continued my career with Bell Labs as a Member of Technical Staff (MTS) but with a new parent company (i.e. Lucent Technologies) bringing over fifteen years of expertise in the field of optical communications which was <u>directly applicable to the Lucent-MONET project</u> (emphasis added).

4

Specifically, before "I" joined Lucent Technologies – Bell Labs and while I was with

Bell Labs from 1981 through 1997, "I" performed leading electrical and optical R&D

work during four generations of advanced <u>international undersea optical network systems</u>

(emphasis added) including among others: TAT-8, TAT-12, TAT-13, TPC-3, FLAG, and

AFRICA-ONE optical systems. Those systems were deployed in various undersea

locations around the world starting from the mid-1980. In 1991, I received the "*AT&T-*

*Bell Laboratories president's quality award for Submarine Systems SBU Product*

*Realization Process*"; an award recognizing my significant contributions on the R&D of

the company undersea optical network systems (see Exhibit-3). "My" expertise in the

optical communications networks which I had acquired before "I" joined Lucent

Technologies – Bell Labs, allowed "me" to play a leading role in the Lucent-MONET

project from 1997 through 1999. In 1999, "my" awards and promotion to Distinguished

Member of Technical Staff (DMTS) after only two years with Lucent Technologies –

Bell Labs is an additional testimony of "my" significant contributions to the Lucent-

MONET project and expertise (see Exhibit-4 and 5).

## 2. Response and Motions

**2.1**    "I" re-assert my denial on all Alcatel-Lucent's counterclaims against "me" which

re-appear in the "Bennis Report" and specifically in the following section: "*2. Scope of*

*Retention*" and the associated allegations which re-appear in "*II Background of Events*".

All the repeated counterclaims against "me" use baseless allegations for which Alcatel-

5

Lucent has yet to produce any evidence to the contrary, as per the on-going and exhaustive discovery process of more than two years. "I "also re-assert "my" denial that Alcatel-Lucent is entitled to any relief requested which is directed to "me".

**2.2** If "I am" dismissed before the trial, or if the case is dismissed by the Court, or if the case is settled outside the Court, or if "I am" found not guilty, then "I" respectfully move to request assessed damages against Alcatel-Lucent to be awarded to "me". The assessed damages (the amount of which is on-going) will include but not limited to: attorney's fees and expenses and any other awards and relief the Court may deem just and proper.

**2.3** The following Excerpts 1 and 2 from the "Bennis Report" are attached

respectively below:

6

I understand that I may be asked to testify regarding my opinions contained herein <u>as well as</u>
<u>related matters</u>, including those raised on cross examination; those necessary to address matters
raised by the Counter-Defendants' witnesses who testify concerning damages issues; or those
otherwise raised at trial by the Counter-Defendants' attorneys or the Court concerning damages
issues.  <u>I expect to further elaborate and expand on the content of my report as necessary to make</u>
<u>my testimony understandable to the Court</u>.  To the extent helpful to explain, or to put in context,
the subject matters discussed throughout my report, I also expect to provide further general
explanations of the matters I discuss.  In connection with any testimony, I may rely on materials
referenced in this report and on the attachments and demonstrative exhibits to be prepared and
identified before my testimony.

I understand that discovery in this matter is ongoing and new information may become available
prior to trial.  <u>Therefore, I will be prepared to supplement my report in the event that any new</u>
<u>facts that may become known to me prior to or during trial impact my opinions or the bases</u>
<u>therefor</u>.  I am aware of my continuing obligation to supplement my report under Rule 26 of the
Federal Rules of Civil Procedure.

**Excerpt-1**: Par.1 and Par.2 of page 6 from "Bennis Report" (emphasis added)

My report, with supporting exhibits, is contained herein, and presents a summary of my opinion
and the bases and reasons therefor as of this date.  To the extent any <u>additional information is</u>
<u>produced by either party, I will be prepared to incorporate any such additional information into</u>
<u>my report, or otherwise to amend or supplement my report as appropriate</u>.

**Excerpt-2:** Par. 2 of page 24 from "Bennis Report" (emphasis added)

With the above Excerpts 1 and 2, "Miss Bennis" seeks to be qualified in providing

testimonies and/or further opinions and/or exhibits on subjects which clearly fall outside

"her" claimed credentials. For instance, the inclusion of the following paragraphs: "***A.***

***Background***" and "***B. The '229 patent***" of section "***III Technology at Issue***" on page

7

14; of the "Bennis Report" and in conjunction with the content of the above Excerpts 1 and 2, "Miss Bennis" seeks to be qualified in providing testimonies and/or further opinions and/or exhibits about the technologies involved in the Lucent MONET-project and the "'229 patent" in dispute and/or optical networking technologies in general. "Miss Bennis" should not be allowed to be vested with such qualifications because "she" would further and unnecessarily complicate the litigation in this case and would be adding absolutely no value to an already scrutinized to "death"' "'229 patent" in dispute. "I" respectfully move to strike current and future testimonies, opinions, exhibits, demonstratives (collectively "inputs") from "Miss Bennis" which are associated with any technical aspects of the Lucent-MONET project and the '229 patent in dispute and any other "inputs" that fall outside the scope of "Miss Bennis" retention and credentials.

**2.4**    The "Bennis Report"; Par. 2 of page 8, reads: *"Mr. Anastasios Tzathas is a former employee of Lucent…….",* also Par. 2 of page 10, reads: *"Mr. Tzathas was an employee of Lucent from February 17, 1997 to August 2, 2000……"* and the last paragraph of page 10, reads: *"According to Alcatel-Lucent, during the period of his employment at Lucent…."*

In response to the above paragraphs from the "Bennis Report", "I" request the following clarification in order to accurately reflect at which part of Lucent Technologies ("Lucent") "I" used to work from 1997 through 2000 (i.e., during "my" entire employment with "Lucent"). The part of "Lucent" "I" used to work initially as a Member

8

of Technical Staff (MTS) and later as a Distinguished Member of the Technical Staff

(DMTS) was the Bell Laboratories ("Bell Labs") which was the research and

development (R&D) arm of "Lucent". The following excerpt from my employment

acceptance letter from Lucent confirms that I was specifically working in the R&D center

of Lucent Technologies (emphasis added):



**Lucent Technologies**
Bell Labs Innovations

January 23, 1997

Anastasios Tzathas
41 Yellowstone Lane
Howell, NJ 07731

Dear Mr. Tzathas:

I am pleased to offer you and acknowledge your acceptance of employment as a Member of
Technical Staff (MTS) in the Cross-Connect Technology & Applications Organization, JC0C30400,
with Lucent Technologies Network Systems. <u>Your assignment will be at 101 Crawfords Corner Road,
Holmdel, New Jersey. In this organization, you will be considered a member of the Bell Laboratories
Community of Technical Resources.</u>

Therefore, "I" respectfully move to make the following clarification that: during "my"

entire employment period from 1997 through 2000, "I" used to work for Bell

Laboratories ("Bell Labs") which was the R&D center of Lucent Technologies

("Lucent").

**2.5** The "Bennis Report"; last paragraph of page 10 reads: "*According to Alcatel-*

*Lucent, during the period of his employment ……. Mr. Tzathas participated on Lucent's*

*behalf, in the Multiwavelength Optical Networking ("MONET")….*" (emphasis added),

9

also last paragraph of page 17 reads: *".....During that time, Mr. Tzathas <u>participated</u> in, on Lucent's behalf, the MONET project.......* " (emphasis added),  in addition, the "Bennis Report" lists the following exhibit on page 11: "*<u>Anastasios Tzathas' Response to the First Set of Interrogatories</u> from Alcatel-Lucent, dated May 30, 2012"* (emphasis added). "My" response to interrogatory No. 9 (and associated production documents) clearly stated the leading role "I" played during the MONET project, a role which was further confirmed by "my" performance reviews, awards and promotion to Distinguished Member of Technical Staff "DMTS" after only two years with Lucent Technologies – Bell Labs. The "Bennis Report" by using the word "*<u>participated</u>*", it overly simplifies "my" role on the Lucent-MONET project as well as "my" expertise. As a result, the "Bennis report" creates an incomplete and misleading picture about "my" expertise and role. (<u>Note</u>: more cases of overly simplification of "my" credentials and contributions were clearly evident in the "*Expert Report of Dr. Wayne H. Knox*", dated July 30, 2013 for which I responded with the following document: "*Statement Regarding Expert Testimony by Anastasios Tzathas*" dated September 20, 2013. In that document, I also included factual and publically available evidence about optical networking technologies).

Therefore, the "Bennis Report" should be appropriately and be accurately descriptive in order to reflect the whole facts; the same way that: "she" asserts in "her" "*Background and Experience*" on page 1, that "she" is a "*Principal*" as oppose to simply an "employee" and on page 4 by asserting that: "*I, and professionals <u>working under my</u>*

10

*direction, have relied upon......*" (emphasis added) as oppose to simply <u>working with a group of professionals</u> (emphasis added). Any simplification and/or downplaying of 'my" factual credentials and contributions put my defense position in an unfairly compromised state, a state which would help Alcatel-Lucent to continue with its baseless arguments and allegations that I had compromised Lucent's intellectual property. I did not need and did not use any Lucent's intellectual property after I left Lucent Technologies – Bell Labs. Therefore, "I" respectfully move to change the word *"participated"* (associated with my role in the Lucent-MONET project) to *"played a leading role"*.

## 3. Conclusions

**3.1** "I" respectfully move to strike current and future testimonies, opinions, exhibits, demonstratives collectively ("inputs") from "Miss Bennis" which are associated with any technical aspects of the Lucent-MONET project and the '229 patent in dispute and any other "inputs" that fall outside the scope of "Miss Bennis" retention and credentials.

**3.2** "I" respectfully move to make a clarification/correction regarding my entire employment with Lucent Technologies from 1997 through 2000 as follows: during "my" entire employment period from 1997 through 2000 "I" used to work for Bell Laboratories ("Bell Labs") which was the R&D center of Lucent Technologies ("Lucent") or simply "I" used to work for Lucent Technologies – Bell Laboratories ("Bell Labs").

**3.3** "I" respectfully move to change the word *"participated"* (associated with my role in the Lucent-MONET project) to: *"played a leading role"*.

**3.4** "I" respectfully move to request damages to be awarded to "me" as per Par. **2.2**.

I may further supplement, refine, or revise as appropriate my response and motions based on additional testimony, documents, or other discovery materials as they become available as well as relevant court orders.

Respectfully submitted,

Dated: October 23, 2013

*Anastasios Tzathas*
11098 San Andrew Drive,
New Market, MD 21774
Tel: 301-865-8301
e-mail: tzx700@comcast.net

*Pro Se*

12

## CERTIFICATE OF SERVICE

"I", Anastasios Tzathas, hereby certify that on October 23, 2013, this document was served

on the persons listed below in the manner indicated:

Todd M. Simpson, Esquire                          VIA ELECTRONIC MAIL
Ropes & Gray, LLP
1211 Avenue of the Americas
New York, NY 10036


Victor M. Felix, Partner                          VIA ELECTRONIC MAIL
Procopio, Cory, Hargeaves & Savitch LLP
525 B. Street, Suite 2200
San Diego, CA 92101-4469




_Anastasios Tzathas_
11098 San Andrew Drive,
New Market, MD 21774
Tel: 301-865-8301
e-mail: tzx700@comcast.net

_Pro Se_

13

## EXHIBIT-1

### DEFINITIONS

As used herein, unless otherwise, the terms listed below shall be defined as follows:

1. The terms: "I", "me" "my" "Tassos" "Tasos" mean Anastasios Tzathas.

2. The terms: "Miss Bennis", "she", "her" mean Miss Melissa A. Bennis.

3. The term "Bennis Report" means the redacted version of the following
   document: "***EXPERT REPORT AND DISCLOSURES OF MELISSA
   BENNIS***".

4. The term "patent '229" means patent 6,973,229, that is, the patent in dispute.

5. The term "Bell Labs" means Bell Laboratories.

## EXHIBIT-2 (page 1of 4)

## CURRICULUM VITAE OF ANASTASIOS TZATHAS

### 1. Employment:

**1.1**      From **9/2006** to **4/2007**: United States Patent & Trademark Office

(USPTO), Alexandria, VA.

Position: Patent Examiner.

**1.2**      From **9/2001**to **4/2003**[1]: Initially with Dorsal and then after its acquisition,

with Corvis Corporation, Columbia, MD.

Position: Director of the Research and Development ("R&D") Undersea Optical

Repeaters and Cable.

I led the company R&D of the Repeaters and Cable for Undersea Optical

Communications Network Systems targeting Long Haul and Ultra Long Haul

international telecommunications systems markets.

---

[1] The deflation of the telecommunications ("telecom") industry "bubble" starting around 2001, forced every one of its participants regardless of size to undergo major consolidations and mergers for their survival. For instance, Lucent Technologies; a multibillion dollar telecom company with its stock soaring in the $80's range during the bubble years, only to see the same stock falling to way below $1 during the deflation followed by its merger with Alcatel (a French telecommunications company. Similar cases of other multibillion dollar telecom companies had become a typical phenomenon during the aforementioned deflation period. Corvis shut its R&D operations down and merged with another services company).

**EXHIBIT-2** (page 2 of 4)

**1.3**        From **8/2000** to **5/2001**: Princeton Optical Systems (a.k.a. Firstwave

Intelligent Optical Systems, Lambda Optical Solutions, etc.), Holmdel, N.J.

Position: Vice President of Electrical and Optical Engineering.

I led the development of the electro-optical architecture of the company Optical

Transport System (OTS).

**1.4**        From **2/1997** to **8/2000**: Bell Laboratories ("Bell Labs") the R&D arm of

Lucent Technologies in Holmdel, N.J.

Position: I started as a Member of Technical Staff ("MTS") and then after only two

years I was promoted to Distinguished Member of Technical Staff ("DMTS") for

significant contributions in the Lucent-MONET project.

I performed leading electrical and optical design work for the Lucent-MONET

project.

**1.5**        From **6/1981** to **2/1997**: Bell Laboratories ("Bell Labs") the R&D arm of

Bell System. (Starting from the early 1980's the parent company (i.e., Bell System)

went through major transformations, divestitures and name changes. By mid-1990, as

a result of another company break-up, Lucent Technologies emerged as a new

company keeping Bell Laboratories as its own R&D center and AT&T as a separate

company concentrated in the telecom services industry segment and NCR was the

third company). Specifically, before I joined Lucent Technologies – Bell Labs and

from 1981 through 1997, I performed leading electrical and optical R&D work during

**EXHIBIT-2** (page 3 of 4)

four generations of advanced international undersea optical network systems

including among others: TAT-8, TAT-12, TAT-13, TPC-3, FLAG, and AFRICA-

ONE optical systems. Those systems were deployed in various undersea locations

around the world starting from the mid-1980.

**Awards:**

1. Recipient of the Bell Laboratories President's Gold Award for my work on the

Lucent-MONET project in 1999.

2. Recipient of the Bell Laboratories President's Award for Submarine Systems SBU

Product Realization Process in 1991.

**Publications:**

1. Co-authored the *"The MONET project - A final Report"*, published in the special

issue of the Journal of the Light wave Technology, VOL. 18, NO 12, December 2000.

2. Technical papers published within Bell System - Bell Labs and AT&T- Bell Labs.

**Patents issued:**

1. *"Control Channel Processor and Switching Mechanism"* US patent 6,766,113

issued on July 20, 2004.

2. **"***Node architecture for modularized and reconfigurable optical networks, and

methods and apparatus therefor***"**; US patent number 6,973,229 issued on December

**EXHIBIT-2** (page 4 of 4)

6, 2005. (Note: above patent was re-examined and an Ex Parte Re-examination

Certificate was issued on November 15, 2011 resulting to patent number 6,973,229

C1).

3. *"Multi-tiered Control Architecture for Adaptive Optical Networks, and methods*

*and apparatus therefor"*; US patent number 7,013,084 issued on March 2006.

**Education:**

1. Master of Science in Electrical Engineering (MSEE): Polytechnic Institute of New

York, Brooklyn, NY (also known as Polytechnic Institute of Brooklyn, Polytechnic

University, and now known as Polytechnic Institute of New York University after its

merger with the New York University).

2. Bachelor of Science in Electrical Engineering (BSEE): New York Institute of

Technology, New York, NY.

3. Diploma in Electronics Engineering (with honors): College of Electronics, Athens

Greece.

**Exhibit 3:** Award recognizing significant contributions on the R&D of the company

Undersea Optical Network systems



AT&T BELL LABORATORIES
PRESIDENT'S QUALITY AWARD

PRESENTED TO

*Anastasios Tzathas*

FOR

*Submarine Systems SBU*
*Product Realization Process*

ON QUALITY DAY

*September 11, 1991*

*John S. Mayo*

PRESIDENT



AT&T

**Exhibit-4:** Award recognizing significant contributions on Lucent-MONET project.

# Bell Laboratories
# President's Gold Award
# Winner
# 1999

Presented to

## *Anastasios Tzathas*

For the outstanding level of Innovation,
Technical Excellence, and GROWS
demonstrated by the

## MONET
## Network Elements Team

Arun Netravali, President

**Lucent Technologies**
Bell Labs Innovations

**Exhibit-5:** Award and promotion (after only two years with Lucent Technologies –Bell Labs) due to significant contributions on the Lucent-MONET project.

Lucent Technologies
Distinguished Member
of Technical Staff

July 1, 1999

Mr. Anastasios Tzathas
Optical Networking Group
Lucent Technologies
101 Crawfords Corner Road
Holmdel, New Jersey 07733

Dear Mr. Tzathas:

By this letter, it is my pleasure to announce that you have been chosen to receive the Lucent Technologies Bell Laboratories Distinguished Member of Technical Staff Award.

With this award, we recognize the distinction you have brought to yourself and to Lucent Technologies through your contributions to the MONET program that made possible significant advances in the design of MONET Network Elements Transport Interface. This work was among the most challenging hardware design assignments, requiring a combination of optical, analog and digital design skills. Not only can your meticulous designs be counted on to work, you also include numerous fail-safe features and capabilities that achieve a higher standard of excellence. Your work has helped to build the reputation for leadership in advanced optical networking that Lucent has acquired. Through your sustained technical contributions, outstanding teamwork, and supportive mentorship, you have set an example of excellence for our organization.

It is my great pleasure to extend congratulations to you from your co-workers and management at Lucent Technologies.

Sincerely yours,

Rod Alferness
Chief Technical Officer
Optical Networking Group
Lucent Technologies

**Visit us at usps.com**

**DuPont® Tyvek®**
**Protect What's Inside™**

Schedule package pickup right from your home or office at usps.com/pickup
Print postage online - Go to usps.com/postageonline

**PLEASE PRESS FIRMLY**

PRESS HARD. YOU ARE MAKING 3 COPIES.

EI 523079339 US

**EXPRESS MAIL**
**UNITED STATES POSTAL SERVICE®**

**Addressee Copy**
Label 11-B, March 2004

**Post Office To Addressee**

**DELIVERY (POSTAL USE ONLY)**

| Delivery Attempt | Time | ☐ AM ☐ PM | Em |
| Mo.      Day | | | |
| Delivery Attempt | Time | ☐ AM ☐ PM | A |
| Mo.      Day | | | |
| **Delivery Date** | Time | ☐ AM ☐ PM | L |
| Mo.      Day | | | |

**CUSTOMER USE ONLY**

**PAYMENT BY ACCOUNT**
Express Mail Corporate Acct. No.

☐ **WAIVER OF SIGNATURE** Additional merchandise... customer requests waiver... I wish delivery to be made wit... of addressee or addressee's ag... judges that article can be left in s... authorize that delivery employee's... valid proof of delivery.

Federal Agency Acct. No. or
Postal Service Acct. No.

**NO DELIVERY**
☐ Weekend  ☐ Holiday

Mailer Signature

**ORIGIN (POSTAL SERVICE USE ONLY)**

| PO ZIP Code | Day of Delivery | Postage |
| 21774 | ☑Next ☐ 2nd ☐ 2nd Del. Day | $ 14.10 |
| Date Accepted | Scheduled Date of Delivery | Return Receipt Fee |
| Mo. 10 Day 23 Year 13 | Month 10 Day 24 | $ |
| Time Accepted | Scheduled Time of Delivery | COD Fee | Insurance Fee |
| 3:20 ☐AM ☑PM | ☐ Noon ☑ 3 PM | $ | $ |
| Flat Rate ☐ or Weight | Military | Total Postage & Fees |
| 0 lbs. 4 ozs. | ☐ 2nd Day ☐ 3rd Day | $ 14.10 |
| | Int'l Alpha Country Code | Acceptance Emp. Initials |
| | | KLW |

**FROM:** (PLEASE PRINT)   PHONE ( 301 ) 865-8301

ANASTASIOS TZATHAS
11098 SAN ANDREW DRIVE
NEW MARKET, MD 21774

**TO:** (PLEASE PRINT)   PHONE (   )

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
844 N. KING
WILMINGTON.

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR I

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY N

**FOR PICKUP OR TRACKING**
Visit **www.usps.com**
Call **1-800-222-1811**

≡EMS≡