# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LAMBDA OPTICAL SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALCATEL-LUCENT USA INC. and | ) | |
| ALCATEL-LUCENT HOLDINGS INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | Civil Action No. 10-487-RGA-CJB |
| ALCATEL-LUCENT USA INC. and | ) | |
| ALCATEL-LUCENT HOLDINGS INC., | ) | |
| | ) | |
| Counter-Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAMBDA OPTICAL SOLUTIONS, LLC, | ) | |
| LAMBDA OPTICAL SYSTEMS CORP., and | ) | |
| ANASTASIOS TZATHAS, | ) | |
| | ) | |
| Counter-Defendants. | ) | |

## REPORT AND RECOMMENDATION

In this patent case filed by Plaintiff Lambda Optical Solutions, LLC ("Lambda" or "Plaintiff") against Defendants Alcatel-Lucent USA Inc. and Alcatel-Lucent Holdings Inc. (collectively, "Alcatel" or "Defendants"), Plaintiff alleges infringement of U.S. Patent No. 6,973,229 ("the '229 patent"). Alcatel timely answered Plaintiff's Complaint, and asserted counterclaims against Lambda, Lambda Optical Systems Corporation ("LOS"), and Anastasios Tzathas (collectively, "Counter-Defendants"), one of the named inventors of the '229 patent. Presently before the Court is Defendants' Motion for Summary Judgment Regarding Damages ("Motion"). (D.I. 368) For the reasons set out below, the Court recommends that Defendants' Motion be GRANTED.

I. **BACKGROUND**

A. **The Parties**

Lambda is a Delaware limited liability company with its principal place of business in Newport Beach, California. (D.I. 1 at ¶ 1) Defendants are Delaware corporations, with their principal places of business in New Jersey and Texas, respectively. (D.I. 74 at 9 at ¶¶ 1, 2) Counter-Defendant LOS is a Delaware corporation with its principal place of business in Reston, Virginia. (*Id.* at ¶ 5) Counter-Defendant Mr. Tzathas is an individual residing in New Market, Maryland. (*Id.* at 10 at ¶ 6)

B. **The '229 Patent**

The '229 patent is entitled "Node Architecture for Modularized and Reconfigurable Optical Networks, and Methods and Apparatus Therefor," and was issued on December 6, 2005. (D.I. 178, ex. B)[1] The '229 patent lists three inventors: Mr. Tzathas, Moon W. Kim, and Abdella Battou. (*Id.*) Counter-Defendant LOS is the sole assignee of the '229 patent, and Plaintiff is its exclusive licensee. (D.I. 1 at ¶¶ 32-33) The '229 patent is based on U.S. Application No. 09/795,950, which was filed on February 28, 2001. The '229 patent contains thirty claims, four of which are independent (i.e., claims 1, 25, 26 and 27), and forty-nine figures. The '229 patent relates to the field of optical networking, which involves transmitting voice, Internet traffic, and other digital data over fiber-optic cables.

C. **Procedural Posture**

Plaintiff's Complaint, which was filed on June 4, 2010, originally alleged infringement

---

[1] The '229 patent appears several times on the docket, including as an exhibit to the parties' Joint Claim Construction Chart. (D.I. 178, ex. B) Further citations will simply be to the "'229 patent."

against 20 Defendants (D.I. 1); other than Alcatel, all of the other originally named Defendants have been dismissed by stipulation. On January 24, 2011, Alcatel timely answered Plaintiff's Complaint, and asserted counterclaims against Counter-Defendants. (D.I. 74) On March 28, 2012, this case was referred to the Court by Judge Richard G. Andrews to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions. After a hearing, (D.I. 215), the Court issued a Report and Recommendation on claim construction on August 3, 2012, (D.I. 234). Judge Andrews overruled objections to that Report and Recommendation on April 11, 2013. (D.I. 325) Briefing on the pending Motion was completed on January 8, 2014, and the Court held oral argument on the Motion (and other pending motions) on March 5, 2014. (D.I. 436, hereinafter "Tr.")

## II. STANDARD OF REVIEW

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). If the moving party meets this burden, the nonmovant must then "come forward with specific facts showing that there is a *genuine issue for trial.*" *Id.* at 587 (emphasis in original) (internal quotation marks omitted). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). During this process, the Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the

evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

However, in order to defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks and citation omitted). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Facts that could alter the outcome are "material," and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must support the assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

### III. DISCUSSION

In this Motion, Alcatel raises two issues relating to damages on which it argues that

summary judgment is appropriate. First, Alcatel argues that Lambda cannot recover pre-suit damages from the date when LOS stopped selling unmarked patented products (February 28, 2007) until the date it gave Alcatel notice of the patent by filing suit in this case (June 4, 2010). (D.I. 412 at 2) Second, Alcatel asserts that Lambda is not entitled to recover damages for sales of Alcatel's 1675 LambdaUnite product. (D.I. 369 at 2) The Court will address these issues in turn.

### A. Whether Pre-Suit Damages Are Available to Lambda After LOS Stopped Selling Unmarked Patented Products

As to this first issue, the facts are relatively simple and undisputed. In 2001, LOS began selling certain products that practice at least one claim of the '229 patent. (D.I. 370, ex. 8 at A079-80; *id.*, ex. 9 at A087) At no point were those products marked to give notice to the public that they were patented, pursuant to the requirements of 35 U.S.C. § 287 ("Section 287"), since the '229 patent had not yet issued. (*Id.*, ex. 8 at A079) On December 6, 2005, the '229 patent was issued, ('229 patent), but LOS continued to sell its above-referenced products without marking them. LOS delivered its final product that practiced a claim of the '229 patent on February 28, 2007.[2] (*Id.*) The parties agree that Alcatel first received actual notice of the alleged infringement only when Lambda filed the present action on June 4, 2010. (D.I. 369 at 4-5; D.I.

---

[2] Citing deposition testimony, Alcatel suggested in its opening briefs that LOS continued to *offer* patented products for sale at least through 2010. (*See, e.g.*, D.I. 369 at 4 &14 n.12 (citing D.I. 370, ex. 7 at A072-75)) Lambda, however, disputes that the "fact that LOS continued to seek opportunities and offered to sell its LambdaNode products through at least 2010" means that "LOS was actually offering for sale an unmarked article as required to invoke section 287(a)." (D.I. 394 at 11 n.3) In its reply brief, Alcatel does not further press any claim that between 2007 and 2010 LOS was "offering for sale" an unmarked, patented article under the meaning of Section 287, and so the Court will not consider any such argument here. (*See* D.I. 412 at 1-3)

5

370, ex. 9 at A090; *id.*, ex. 11 at A099-100)

This damages dispute relates only to the time period between when LOS stopped selling unmarked patented products (February 28, 2007) and the date Lambda gave Alcatel actual notice by filing suit (June 4, 2010). In other words, Lambda admits that it cannot obtain damages for the time period between when the '229 patent issued and when LOS stopped selling unmarked patented products. (D.I. 394 at 3) And Alcatel does not dispute that Lambda can seek damages for the time period after Lambda filed suit.

The statute at the forefront of the parties' dispute is 35 U.S.C. § 287(a), which provides that:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

Thus, when required by the statute, notice that sales of a product may constitute patent infringement may be given to the infringer in one of two ways: (1) constructive notice by marking the patentee's own product covered by the patent or (2) actual notice. *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1375-76 (Fed. Cir. 2008).

Whether damages are available under certain scenarios pursuant to Section 287(a) is relatively clear. For example, if a patentee never produces or sells a patented product (i.e., it is a "non-producing patentee"), the patentee's ability to recover damages is not limited. *See Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219-20 (Fed. Cir. 2002). Or, if a patentee sells unmarked product, but later begins selling marked product, recovery of damages is inappropriate for the time period when it sells the unmarked product, but appropriate after it begins marking. *See Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1530, 1534-38 (Fed. Cir. 1993). What is a bit less clear is the legal question presented here: whether a patentee that sells unmarked product, but later ceases such sales, becomes a non-producing patentee that may obtain damages under Section 287(a) once sales of the unmarked product cease.

The parties agree that very few cases have addressed similar factual scenarios. (*See* Tr. at 94, 111) The case that is closest to the facts here is *Alpex Computer Corp. v. Parker Bros.*, Civil Action No. 85-3969-MC, 1988 WL 507622 (D. Mass. Aug. 12, 1988). In *Alpex*, the plaintiff entered into a licensing and marketing agreement with Fairchild Camera ("Fairchild") to produce and sell video game cartridges. *Alpex*, 1988 WL 507622, at *1. At some point after Fairchild produced and sold some cartridges, the plaintiff obtained the rights to a patent covering these cartridges. *Id.* Even after the plaintiff obtained patent protection for those cartridges, however, Fairchild continued selling them without a mark indicating that the product was covered by the newly-obtained patent. *Id.* Fairchild stopped producing these cartridges by no later than April 1979. *Id.* The defendant began marketing its accused product in May 1982, and was given actual notice of alleged infringement at some point thereafter. *Id.* at *1-2. The defendant argued that the plaintiff, through its licensee, Fairchild, failed to comply with the marking requirements

7

of Section 287, and thus the plaintiff could not obtain damages until the point when the defendant received actual notice. *Id.*

The *Alpex* Court agreed with the defendant's argument, and provided several reasons in support. *Id.* at *2. First, it concluded that the plaintiff was not the type of non-producing patentee for whom damages are available under Section 287, because it did in fact (through Fairchild) manufacture and sell patented cartridges at one point. *Id.* at *1. Second, the *Alpex* Court noted that the plaintiff was unlike patentees from other cases who remedied their failure to mark by doing so at a later time—and thus provided accused infringers with constructive notice at some point prior to the filing of suit. *Id.* at *2. Finally, and perhaps most importantly, the *Alpex* Court noted that one of the purposes behind Section 287 is to prevent "unwilling infringement by a member of the public who, seeing an article bearing no mark indicating that it is patented, proceeds to make other specimens of it[,]"; it went on to conclude that the plaintiff, by failing to take "responsibility from the beginning to protect its patent[,]" had not taken any steps to prevent unwilling infringement. *Id.* (internal quotation marks and citation omitted). Accordingly, the *Alpex* Court granted summary judgment on this damages issue in favor of the defendant. *Id.*; *see also Northbrook Digital Corp. v. Browster, Inc.*, Civil No. 06-4206, 2008 WL 4104695, at *1-6 (D. Minn. Aug. 26, 2008) (citing the *Alpex* decision and similarly granting summary judgment to limit a patentee's damages because the marking requirements of Section 287 were triggered by a licensee's sale of patented software products, and "the fact that the licensing agreement terminated did not convert [the plaintiff] to a 'non-manufacturing patentee' to which the marking requirements did not apply").

Lambda attacks the decision in *Alpex* in two ways, both of which are unavailing. First,

Lambda asserts that the *Alpex* Court erred in stating that the purpose behind Section 287 is to prevent "'unwilling infringement by a member of the public who, seeing an article bearing no mark indicating that it is patented, proceeds to make other specimens of it.'" (*See* D.I. 394 at 10 (citation omitted); *see also* Tr. at 109 (Lambda's counsel asserting that the prevention of innocent infringement, as stated in *Alpex*, is "not real policy")) Instead, Lambda argues that the real purpose of Section 287 is "to protect innocent infringers *during the period of time the patent holder is contributing to the problem of innocent infringement through its failure to comply with the statute.*" (D.I. 394 at 10-11 (emphasis in original) (citing *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, Civil Action No. 00-981-KAJ, 2003 WL 1606081, at *14-16 (D. Del. Feb. 4, 2003)) The Court disagrees with Lambda because its argument appears to contradict the Federal Circuit's articulation of the "three related purposes" behind Section 287: "1) helping to avoid innocent infringement . . . 2) encouraging patentees to give notice to the public that the article is patented . . . and 3) aiding the public to identify whether an article is patented[.]" *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998) (citations omitted).[3] The first of these three purposes is that explicitly invoked by *Alpex*. And nowhere in this enunciation of purpose did the Federal Circuit suggest that Section 287's goals are as circumscribed as what Lambda suggests.

Lambda's second point is closely related to its first. Here, Lambda appears to suggest

---

[3] *See also Motorola, Inc. v. United States*, 729 F.2d 765, 772 (Fed. Cir. 1984) (noting that "a fundamental rationale" of Section 287 is "supplying notice in order to prevent innocent infringement"); *cf. Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387, 394 (1936) (explaining that the purpose of Section 4900 (the predecessor to Section 287) "is, not that notice may be given of the issuance and existence of a patent, but to prevent innocent infringement; and this is accomplished in two ways—by marking the article, if made, for all to see; or by sending an accusing notice").

9

that a case from this District, *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, Civil Action No. 00-981-KAJ, 2003 WL 1606081 (D. Del. Feb. 4, 2003), is controlling under these circumstances. (*See* D.I. 394 at 10-11; *see also* Tr. at 112 (Lambda's counsel arguing that *Alpex* should not be relied upon here, in part because it was "decided before" *Tulip Computers*)) Lambda's reliance on *Tulip Computers*, however, is misplaced.

The facts of *Tulip Computers* are easily distinguishable from those of the instant case. In *Tulip Computers*, when the patent-in-suit issued, the patentee-plaintiff did not produce or sell any product covered by that patent-in-suit, nor had it previously done so. *Tulip Computers*, 2003 WL 1606081, at *14. More than one year after the patent issued, the patentee-plaintiff began selling a product covered by that patent, but those products were never marked pursuant to Section 287, and sales continued until the time that the patentee-plaintiff provided actual notice to the defendant of alleged infringement. *Id.* at *13. The defendant argued that the patentee-plaintiff could not recover any damages until actual notice was provided. *Id.* at *12. That is, the defendant argued that even for infringement occurring during the time period before the patentee-plaintiff began selling unmarked products, no damages could be obtained. The *Tulip Computers* Court held that the defendant was incorrect, and that Section 287(a) did not eliminate the defendant's liability for infringing activities from the date the patent issued until the first unmarked products were shipped. *Id.* at *13.

Lambda liberally quotes the *Tulip Computers* decision without acknowledging the differences between the factual scenario in that case and the one here. But those factual differences make a difference in understanding the intent behind key portions of that decision. For example, the *Tulip Computers* Court did state that Section 287(a) is designed to protect

innocent infringers "during the period of time the patent holder is contributing to the problem of innocent infringement through its failure to comply with the statute[.]" *Id.* at *16. Lambda argues that this statement was meant to indicate that at *all times* when a patentee-plaintiff is not producing and selling unmarked products, damages for infringement are appropriate. (D.I. 394 at 11) The Court does not read this (and other similar statements from *Tulip Computers* that Lambda cites) so broadly. There is no reason to assume that the *Tulip Computers* Court intended this quote to address a time period in which a patentee stopped selling unmarked products after having sold them for some time. Moreover, as Alcatel demonstrates, it is just as easy to pull quotations from the *Tulip Computers* decision that support Alcatel's contrary argument. (*See* D.I. 412 at 2 (Alcatel quoting *Tulip Computers* as stating that once Section 287 is triggered, it "'precludes recovery of damages from the date of that triggering event until notice is given to the infringer'") (quoting *Tulip Computers*, 2003 WL 1606081, at *15)) Ultimately, while *Tulip Computers* is well-reasoned and produces an outcome with which neither party quibbles, it simply addresses a question significantly different than the one presented here. Thus, at a minimum, the Court does not find that *Tulip Computers* forecloses Alcatel's position here.

In the end, the Court concludes that the approach taken by the *Alpex* Court is the appropriate one. It does so for all the reasons stated in that opinion (which apply with equal force here). And it does so because this outcome also more closely adheres to Section 287's two other purposes, which have been highlighted by the Federal Circuit (but were not mentioned in *Alpex*). That is, if a patentee-plaintiff were able to return to the more favorable status of a non-producing patentee simply by halting production of unmarked product, this would not encourage patentees in the first instance "to give notice to the public that the article is patented," nor would

it "aid[] the public to identify whether an article is patented[.]" *Nike, Inc.*, 138 F.3d at 1443.

This outcome also is consistent with the actual language of Section 287(a). The statute says that "[i]n the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." 35 U.S.C. § 287(a). These words suggest that if a patentee (as here) was in fact responsible for a "failure to mark" patented products that were sold at one time, then thereafter "no damages shall be recovered" until the patentee takes an active step to address that failure, and to affirmatively provide notice to a potential infringer. (*See* D.I. 369 at 15) In other words, when the patentee has failed to live up to the marking requirements set out in the statute, and contributed to the problem of innocent infringement, then the statute appears to put the onus on the patentee to actually do something thereafter to help ensure that the goals of Section 287(a) will be realized before the patentee can recover damages. *Cf. Am. Med. Sys.*, 6 F.3d at 1537 ("[W]e construe section 287(a) to preclude recovery of damages only for infringement *for any time prior to compliance* with the marking or actual notice requirements of the statute.") (emphasis added);[4] *Texas Digital*, 308 F.3d at 1220 ("The recovery of damages

---

[4] Lambda's repeated citations to *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523 (Fed. Cir. 1993), are similarly unpersuasive. As with *Tulip Computers*, the factual circumstances and the issue addressed were significantly different from that here. *See Am. Med. Sys., Inc.*, 6 F.3d at 1534-38. For example, Lambda cites *Am. Med. Sys., Inc.* for the proposition that "the failure to mark a covered article after issuance of the patent does not in itself preclude the right to recover damages for periods of compliance with the statute after the initial failure to mark." (D.I. 394 at 9 (citing *Am. Med. Sys., Inc.*, 6 F.3d at 1537)) That statement was true in the context of that case—a case in which the patentee-plaintiff shipped some unmarked product after the issuance of the patent, but soon after began marking its products. *See Am. Med. Sys., Inc.*, 6 F.3d at 1534. But it does not logically follow that a patentee-plaintiff who never marks its products (but stops selling those unmarked products for a time) should reap the same benefits as

[under Section 287] is not limited *where there is no failure to mark*[.]") (emphasis added).[5] In the scenario here, LOS never took an affirmative act to effectuate notice after it sold unmarked products in the relevant post-December 6, 2005 time period—here, no such act was taken until Lambda sued Alcatel in 2010.

Accordingly, the Court recommends that summary judgment be granted in Alcatel's favor on this issue, and finds that Lambda is not entitled to damages for the time between when LOS stopped selling unmarked products and the date when Lambda filed suit.

### B. Whether Lambda is Entitled to Recover Damages for Sales of Alcatel's 1675 LambdaUnite Product

Alcatel contends that Lambda is not entitled to damages based upon sales of Alcatel's 1675 LambdaUnite product. (D.I. 369 at 16-20) Lambda disagrees, arguing that: (1) the sales of and offers to sell the 1675 LambdaUnite with the 1625 LambdaXtreme product directly infringe the '229 patent; (2) Alcatel's sales of the 1675 LambdaUnite with the 1625 LambdaXtreme induced infringement of the '229 patent; and (3) Alcatel's sales of the 1675 LambdaUnite with the 1625 LambdaXtreme constitute "convoyed sales," thereby rendering damages on both products appropriate. (D.I. 394 at 12-19)

Implicit in all of Lambda's arguments is that the 1625 LambdaXtreme product infringes

---

a patentee-plaintiff who *actively takes steps* to protect its patent by marking its products after an initial failure to mark.

[5]   (*See also* D.I. 412 at 3 (Alcatel arguing that "[o]nce the patentee has contributed to the problem of innocent infringement by failing to mark, the statute requires that the patentee provide notice to the alleged infringer to recover damages"); Tr. at 93)

13

the '229 patent.[6] However, in reviewing Alcatel's Motion for Summary Judgment of Non-Infringement, the Court recommended that summary judgment be entered as to this product. (D.I. 443 at 17) That conclusion was based upon the 1625 LambdaXtreme's inability to "selectively provide optical coupling," as is required to find infringement of independent claims 1 and 25. (*Id.*)

To the extent that Lambda asserts that the 1675 LambdaUnite and the 1625 LambdaXtreme perform acts that directly infringe the '229 patent, there is no indication that these alleged acts of infringement incorporate the "selectively provide optical coupling" limitations of claims 1 and 25 to any greater degree than does the 1625 LambdaXtreme acting on its own. In explaining how these two products directly infringe (thereby making damages appropriate under Lambda's first two theories), Lambda cites to the report of its expert, David A. Smith, Ph. D. (*See* D.I. 394 at 15-16) That report states that the 1675 LambdaUnite "contains at least part of the [optical access ingress subsystem] and the [optical access egress subsystem] as well as the [access line interface] functionality." (D.I. 396, ex. 14 at A380) Even assuming that, under Lambda's theory, the 1675 LambdaUnite plays some role in the infringement of claims 1 and 25 (both of which involve, at some level, an optical access ingress subsystem and the optical access egress subsystem), nothing in the cited portion of Dr. Smith's expert report addresses how the two products acting together might "selectively provide optical coupling" in a way that is different from how the 1625 LambdaXtreme acts on its own. And the extent to which the 1675 LambdaUnite alters access line interface functionality is irrelevant because the access line

---

[6] It is undisputed that the 1675 LambdaUnite, acting on its own, does not infringe. (*See* D.I. 369 at 6; D.I. 394 at 17-19; D.I. 412 at 4)

14

interface limitations (i.e., claims 13-16) are all dependent on claim 1. (*See* '229 patent, col. 55:36-57); *see also Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim."). Lambda's "convoyed sale" theory fares no better, as under that theory Lambda seeks to demonstrate that when the 1675 LambdaUnite and 1625 LambdaXtreme act in "combination" one can "obtain[] the same desired functionality of the [1625 LambdaXtreme][,]" (*see* D.I. 394 at 19), i.e., a functionality that does not infringe claims 1 and 25.

Accordingly, the Court recommends that summary judgment be granted in Alcatel's favor on this damages issue as well.

## IV. CONCLUSION

For the reasons set out above, the Court recommends that Defendants' Motion be GRANTED in its entirety.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Because this Report and Recommendation may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Report and Recommendation. Any such redacted version shall be submitted no later than **August 5, 2015** for review by the Court, along with an explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Report and Recommendation.

Dated: July 29, 2015

						/s/ Christopher J. Burke
						Christopher J. Burke
						UNITED STATES MAGISTRATE JUDGE